**TRAVELERS INSURANCE COMPANY,**
Appellant,

v.

**Marjorie DAVIS et al., Appellees.**

No. 72–1373.

United States Court of Appeals,
Third Circuit.

Argued March 8, 1973.

Decided Jan. 3, 1974.

Joseph J. Murphy, Robert J. Murphy, Thomas W. Murphy, Murphy, Murphy & Murphy, Philadelphia, Pa., for appellants.

Marshall A. Bernstein, Marlene F. Lachman, Bernstein, Bernstein, Harrison & Kessler, Philadelphia, Pa., for appellees.

Before FORMAN, VAN DUSEN and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

FORMAN, Circuit Judge.

This is an appeal from an order of the United States District Court for the Eastern District of Pennsylvania dismissing with prejudice under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) [1] a complaint under the Declar-

---

1. Rules 12(b)(1) and 12(b)(6) state:
 "(b) How Presented. Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or a third-party claim, shall be asserted in the responsive pleading

atory Judgment Act, 28 U.S.C. §§ 2201–2202, by Travelers Insurance Company ("Travelers") against Marjorie Davis, Paul Davis and Morris Solomon, the Executors of the Estate of Edward P. Goldburgh (the "insured"), the American Arbitration Association (the "Association"), and Arbitrators Guy T. Matthews, Arthur G. Raynes, and Richard M. Rosenbleeth.

The relevant facts, substance of the complaint, and procedural history of the case are set forth below.

On October 30, 1967, the appellant, Travelers, a Connecticut corporation, issued in Massachusetts a comprehensive automobile liability policy to American Biltrite Rubber Co., Inc. ("Biltrite"), a Delaware corporation whose principal place of business was Massachusetts. The policy covered forty-three vehicles located throughout the United States. Each vehicle was listed in the policy for uninsured motorists coverage of $10,000 per person and $20,000 per vehicle.

On November 21, 1967, Edward P. Goldburgh, a Pennsylvania citizen and employee of Biltrite, was killed in the course of his employment in Texas while a passenger in vehicle number forty, when struck by a piece of lumber which fell from a passing truck. Since the alleged tortfeasor was not protected by liability insurance, claim was made by the Executors (all of whom were Pennsylvania citizens) of the Estate against Travelers under the arbitration clause of the uninsured motorists provision of the policy.[2] Travelers and the Executors were unable to reach agreement upon the extent of coverage or the amount of payment due. Travelers contended that the limit was $10,000. The Executors contended that the limit was $430,000.[3] The Executors sought arbitration as provided for in the insurance contract. Travelers agreed. The three Arbitrators named above were appointed by the American Arbitration Association. Both parties entered into a written stipulation that the Arbitrators initially should make a preliminary determination of the extent of coverage.[4]

---

thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, . . . (6) failure to state a claim upon which relief can be granted, . . . ."

2. Clause VI F of the contract states:
 "F. Arbitration. If any person making claim hereunder and the company do not agree that such person is legally entitled to recover *damages* from the owner or operator of an *uninsured highway vehicle* because of *bodily injury* to the *insured,* or do not agree as to the amount of payment which may be owing under this insurance, then, upon written demand of either, the matter or matters upon which such person and the company do not agree shall be settled by arbitration, which shall be conducted in accordance with the rules of the American Arbitration Association unless other means of conducting the arbitration are agreed to between the *insured* and the company, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Such person and the company each agree to consider itself bound and to

be bound by any award made by the arbitrators pursuant to this insurance."

3. The Executors asserted that their claim fell under the doctrine of "stacking" which means multiplying the total number of cars covered under the policy (43) by the coverage per car ($10,000).

4. The stipulation states:
 "Stipulation
 "AND NOW, to wit, this 16th day of June, 1970 in an effort to clarify the facts and issues in the above captioned action, it is hereby Stipulated and Agreed by and between counsel for Claimant and counsel for Respondent, The Travelers Insurance Company as follows:
 "1. That on November 21, 1967, Edward P. Goldburgh, deceased, was a passenger in a motor vehicle (1968 Chevrolet BelAir, Texas License number NFL 913) covered under the terms of an automobile liability insurance policy issued to the American Biltrite Rubber Company, Inc., in the State of Massachusetts by the Travelers Insurance Company;
 "2. That the policy of insurance referred to above, is identified by policy number SLA–7736251, with the effective dates of October 30, 1967 to October 30, 1968;

The first hearing was on September 21, 1970 with oral argument and the submission of written briefs. Supplemental briefs were received by the Association on October 13, 1970, and mailed to the Arbitrators. On November 30, 1970, the Association notified counsel for the parties that it had received a letter dated November 25 from Arthur C. Raynes, one of the Arbitrators, that they had unanimously ruled for the appellees. There was no written opinion by the Arbitrators. A second hearing on negligence and damages has not been held because of the ensuing legal proceedings.

Travelers petitioned the Court of Common Pleas of Philadelphia County to "Vacate [the] Award of the Arbitrators . . . Strike the Panel . . . [and] Direct the Arbitrators to File an Opinion in Support of its Award" on December 14, 1970. The petition to vacate the award of the Arbitrators alleged that a more than thirty-day delay from the closing of the hearing to the "Award" divested the Arbitrators of jurisdiction because it represented a violation of the rules of the Association. The petition also alleged that the Arbitrators did not rule on whether any "award" could be reduced by amounts paid and payable under Workmen's Compensation laws. The petition to strike the panel of Arbitrators alleged various violations and irregularities in the selection thereof. The petition to direct the Arbitrators to

file an opinion alleged a disregard of the insurance contract and the intent of the parties. The petitions were denied on February 16, 1971. No copy of the opinion of the Court of Common Pleas appears in the record of the instant case. Travelers appealed to the Superior Court of Pennsylvania on March 1, 1971. This appeal was quashed on June 25, 1971. No copy of the opinion of the Superior Court appears in the record herein.

Travelers resorted to the District Court on October 22, 1971 by filing suit under the Declaratory Judgment Act. The complaint comprised some twenty-seven numbered paragraphs and a prayer for relief. Paragraphs 1–4 alleged diversity, jurisdictional amount, and the presence of federal questions. Paragraphs 5–7 repeated the facts out of which this dispute arose. Paragraph 8 alleged that the widow of the decedent was entitled to some $36,000 as Workmen's Compensation benefits. Paragraphs 9–12 detailed the claims of the Executors which led to arbitration, asserting among other things that the stipulation between counsel specified the extent of coverage as the initial issue to be resolved by the Arbitrators, but that Travelers never conceded that the Arbitrators had "jurisdiction over the person or the subject matter . . ." and had "never waived its right to challenge the propriety of such an adjudication, the application of Pennsylvania law or, the

"3. That the policy of insurance referred to above contained Uninsured Motorist Coverage;

"4. That the Uninsured Motorist provisions of the said policy applies forty-three (43)

MCB JFD

to ~~twenty-seven~~ (27) separately described motor vehicles in an amount of $10,000.00 per vehicle;

"5. That Edward P. Goldburgh, deceased, as a passenger, in the aforesaid 1968 Chevrolet motor vehicle, met the qualifications of an insured under the Uninsured Motorist provisions of the above stated policy;

"6. That an issue involved herein is whether or not the coverage afforded an insured under the above policy is subject

to 'stacking'; i. e. whether coverage extended to deceased was applicable only for the car in which he was riding or as multiplied by the number of cars covered under the policy;

"7. That the issue of 'stacking' be heard by the panel of Arbitrators preliminary to consideration of any other issue in the case.

MCB JFD

~~and that the decision rendered be dispositive of this issue in the case.~~

"BERNSTEIN, BERNSTEIN,
HARRISON AND KESSLER
By:
/s/ Marshal A. Bernstein
"MURPHY, VELDORALE, WEISBORD
and DOUGHERTY
By:
/s/ John F. Dougherty, Jr."

denial of the right of Appeal." Travelers further alleged in paragraph 12 that it never waived "its right to challenge the right of the Arbitrators to determine the construction of the insuring agreement, with particular reference to the extent of the coverage, nor to determine the extent of their own jurisdiction."

Paragraphs 13–15 refer to the Arbitrators' "decision" and challenge it as a violation of Association rules. Paragraph 16 challenges the Arbitrators' jurisdiction "ab initio" because the interpretation of the insurance agreement was not the Arbitrators' function. In paragraph 17 Travelers avers that ". . . if there be a dispute, the issue is restricted to the damages suffered by the claimant and to no other facet of the litigation." Paragraph 18 alleges that "an adjudication which includes the stacking of coverage" violates the due process and equal protection clauses of the Fourteenth Amendment. Paragraph 19 alleges that by "stacking the coverage" the Arbitrators burden its interstate business and "may not be tolerated whether" caused by Pennsylvania statutes, Insurance Commission directives, or Association rules. Paragraph 20 avers that plaintiff cannot "obtain relief, either from the arbitrators or by appeal to the courts of this Commonwealth, in the absence of fraud or misconduct of the arbitrators not present herein." Therefore, Travelers urges, it is entitled to relief under the Declaratory Judgment Act "as otherwise it will suffer great damage and prejudice . . . ."

Paragraph 21 avers that a declaratory judgment is proper because there are only issues of law in dispute. Paragraph 22 avers that "immediate and irreparable injury" will result unless the District Court issues "a temporary restraining order and/or a preliminary injunction to be followed by a permanent injunction . . . ." Paragraph 23 asserts that the Executors propose to conduct discovery proceedings in Beaumont, Texas "on or about November 8, 1971 or at such time prior to the time in which [Travelers] . . . may give the requisite notice for an injunction . . . ." Paragraph 24 urges that if the Executors are not restrained irreparable harm will ensue. Paragraph 25 asserts other reasons for invalidating the discovery proceedings. Paragraph 26 requests that the court declare the law of Pennsylvania not applicable to the case. Paragraph 27 requests that the "award or order of the arbitrators . . . be vacated, dissolved and set aside and the panel of arbitrators discharged."

Other relief sought includes:

1) A declaration that the limit of liability is $10,000 providing that claimants establish liability and entitlement thereto;

2) A declaration that adjudication under Pennsylvania law represents deprivation of due process and equal protection;

3) A declaration that use of Pennsylvania law burdens interstate commerce;

4) A declaration that the Arbitrators' initial jurisdiction was divested by failure to make a timely award;

5) A restraining order to prevent the Executors from proceeding with discovery in Texas.

The Executors' answer denied the presence of a federal question; relied upon the stipulation as their second defense; urged that Travelers had failed to state a claim upon which relief may be granted; that it was estopped from making the claim contained in the Complaint; that the court lacked subject matter jurisdiction and that the policy provided for arbitration.

In the motion to dismiss under Rule 12(b), the Executors reiterated the defenses in their answer and added that the Arbitrators had made a "preliminary finding" and not a final award, and that plaintiff had petitioned and lost in the two state courts.

In a memorandum opinion on March 1, 1972, the District Court dismissed

Travelers' complaint with prejudice. In its brief opinion, the court first reviewed the factual and procedural history. The court accepted as fact the stipulation by counsel "that the issue of the amount of coverage available under the policy would be the first issue to be settled by arbitration."[5] The court then considered the instant case in the light of the decision of its colleague, Judge Luongo, in Gulf Insurance Co. v. American Arbitration Association,[6] and stated that *Gulf* held "that Pennsylvania rule in common law arbitration is that the arbitrator is the final judge of both law and facts in any dispute before him."[7] The court noted that in *Gulf* there was also a question of the extent of liability of an insured motorists provision and that the arbitration provision was "exactly the same provision [as] in the case before me." In *Gulf*, an injunction against arbitration was denied. Under the precedent of *Gulf*, the court granted the defendants' Rule 12(b) motion to dismiss.

Travelers then appealed to this court.

The initial question is whether the District Court was confronted with a complaint based upon a *preliminary ruling* of the Arbitrators. Paragraph 7 of the stipulation[8] provides "That the issue of 'stacking' be heard by the panel of Arbitrators preliminary to consideration of any other issue in the case." That the issue of stacking was a preliminary question for the Arbitrators rather than a final award cannot be controverted. Nor can the striking of the clause, "and that the decision rendered be dispositive of this issue in the case," from paragraph 7 have any binding effect. That would have made the ruling of the Arbitrators merely an advisory action which is not within their province. Moreover, the letter from the Association[9] refers to a ruling, not an award, and looks to the parties to go on with the arbitration proceedings. It is apparent that the ruling in question by the Arbitrators was simply preliminary to the subsequent procedure of determining liability and making an award if the Arbitrators determined that such was warranted.[10]

The next question is whether the District Court could properly hear a complaint based upon a preliminary ruling. If this controversy were under the United States Arbitration Act,[11] then the little available precedent[12] and a plain reading of the statutory language[13]

---

5. Appendix at 88–89a.

6. 311 F.Supp. 989 (E.D.Pa.1970).

7. Appendix at 88a.

8. See note 4.

9. Appendix at 39a.

10. In Dunn v. Lewis, 11 Ches.Co.Rep. 370 (1964), a common-law arbitration case, the court held that an action could not be brought for the recovery of an "award" until it was final and definite.

11. 9 U.S.C. § 1 et seq.

12. Luff v. Ryan, 128 F.Supp. 105 (D.C.D.C. 1955), a United States Arbitration Act case, held that the preliminary rulings of an arbitration board prior to the making of its award are not justiciable, and a motion for declaratory judgment and an injunction was denied.

13. The wording of 9 U.S.C. § 10 is:
 "In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
 "(a) Where the award was procured by corruption, fraud, or undue means.
 "(b) Where there was evident partiality or corruption in the arbitrators, or either of them.
 "(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.
 "(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
 "(e) Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators."

would require immediate dismissal. The same result would obtain under the Pennsylvania Act[14] if that Act were applicable,[15] for both federal and state public policy as fashioned by the respective arbitration acts are, in effect, identical.[16]

*Gulf*,[17] upon which the District Court relied in granting the Executors' motion to dismiss under Fed.R.Civ.P. 12, held that when the parties have agreed to arbitration "as expressed in the policy," the arbitrators' decision is binding on matters of fact and law. Since all matters were within the jurisdiction of the arbitrators in *Gulf*, it was held that there were no claims upon which the District Court could grant relief.

The District Court herein thought *Gulf* and the instant case almost identical and that Pennsylvania law controlled. In *Gulf*, however, the parties acknowledged that Pennsylvania law applied. In the instant case, Travelers challenges the application of that law. Also, in *Gulf*, the plaintiff sought an injunction to prevent arbitration, but here Travelers has attacked an arbitrators' ruling after losing two decisions in the Pennsylvania court system.[18] Whether these two distinctions—the lack of agreement on the applicable law and the presence of state court decisions on issues presented to the District Court—affect the outcome of the instant case is in question.

■ The District Court was correct in assuming that Pennsylvania law applies. Under Klaxon Co. v. Stentor Electric Manufacturing Company, Inc.,[19] a federal court must apply the conflicts of law rule of the forum state. The Pennsylvania conflicts of law rule is stated in Griffith v. United Air Lines, Inc.[20] There, a Pennsylvania domiciliary was killed in an airplane crash in Colorado. Decedent's executors sued the airline for negligence and breach of contract. The Court of Common Pleas of Philadelphia County held that the law of the place of injury controlled on the matter of damages. The Pennsylvania Supreme Court reversed the Court of Common Pleas. After a review of federal and state decisions, it held that the choice of law requires an analysis of the substantiality of the various interests of the states having contact with the case.

Applying *Griffith* to the facts of the instant case, Texas "has relatively little interest in the measure of damages to be recovered unless it can be said with certainty that defendant acted in reliance

9 U.S.C. § 11 provides:

"In either of the following cases the United States Court in and for the district wherein the award was made may make an order modifying or correcting the award upon the application of any party to the arbitration—

"(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

"(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

"(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

"The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties."

14. 5 Purdon's Pa.Stat.Ann. ch. 4 § 161 et seq.

15. "The rule has been reiterated in many recent decisions that the provisions of the Act of 1927 [the Pennsylvania Arbitration Act] are applicable only if the agreement specifically refers to the Act or there is other evidence justifying the conclusion that both parties agreed either expressly or impliedly that the provisions of the Act should apply." (Citations omitted.) La Vale Plaza, Inc. v. R. S. Noonan, Inc., 378 F.2d 569, 571 (3d Cir. 1967).

16. The language of the Pennsylvania Act is almost identical to that of the United States Act.

17. 311 F.Supp. 989 (E.D.Pa.1970).

18. See text at pp. 4 and 5.

19. 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

20. 416 Pa. 1, 203 A.2d 796 (1964).

.on that state's rule." [21] Massachusetts' interest is somewhat greater because the contract was made there. But Pennsylvania's interest is the greatest because decedent and his executors are citizens of that state. Pennsylvania "is vitally concerned with the administration of decedent's estate and the well-being of the surviving dependents . . . ." [22]

.The choice of Pennsylvania law is further supported by Clay v. Sun Insurance Office, Ltd.,[23] which held that the use of the law of the forum state is consistent with due process when there is an ambulatory contract and the parties thereto have sufficient activities within the forum state. In the instant case Travelers is an insurer actively conducting business within the State of Pennsylvania, and subject to the jurisdiction of the Insurance Department of that state.

 In Pennsylvania, the common-law arbitrator is the final judge of both the law and the facts on the matters presented to him.[24] Authority is provided by National Grange Mutual Insurance Co. v. Kuhn,[25] in which the Pennsylvania Supreme Court held that the "matter or matters" provision of the arbitration clause of uninsured motorists coverage provides for the resolution by arbitration of all disputes.[26] Therefore, the District Court in the instant case correctly applied Pennsylvania law when it dismissed the claim that the court should determine the extent of coverage, since the subject matter was solely within the jurisdiction of the Arbitrators.

Whether the District Court properly dismissed the complaint requires a prefatory discussion of the use of the declaratory judgment.

 The objectives of the Federal Declaratory Judgment Act are:

" . . . to avoid accrual of avoidable damages (footnote omitted) to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage had accrued." [27]

An additional purpose is to clarify legal relationships before they have been disturbed or a party's rights violated. The granting of a declaratory judgment is discretionary and not mandatory.[28] "Said discretion is to be exercised in accordance with sound judicial principles and the purposes of the Declaratory Judgment Act." [29] One such judicial principle is the avoidance of needless conflict with a state's administration of its own affairs. A second is that litigation belongs in the court which is best suited to determine the controversy.[30] "The object of the statute [the Federal Declaratory Judgment Act] is to afford a new form of relief where needed, not to furnish a new choice of tribunals or to draw into the federal courts the adjudication of causes properly cognizable by courts of the states." [31]

21. 416 Pa. at 23, 203 A.2d at 806. No such reliance was pleaded.

22. *Id.* at 25, 203 A.2d at 807. See also Grant v. McAuliffe, 41 Cal.2d 859, 264 P.2d 944 (1953) (where, in automobile accident inArizona between California cars and California residents, the California Supreme Court avoided the *lex loci delicti* rule by viewing the problem as of the administration of decedents' estate and within the law of the forum).

23. 377 U.S. 179, 84 S.Ct. 1197, 12 L.Ed.2d 229 (1964).

24. 311 F.Supp. at 990.

25. 428 Pa. 179, 236 A.2d 758 (1968).

26. See also Preferred Risk Mutual Insurance Company v. Martin, 436 Pa. 374, 260 A.2d

804 (1970). (Arbitration of issue of coverage under uninsured motorists clause required by court. *Kuhn* cited as authority.)

27. E. Edelmann & Co. v. Triple-A Specialty Co., 88 F.2d 852, 854 (7th Cir. 1937) quoted in 6A Moore's Federal Practice 57–26.

28. Brillhart v. Excess Insurance Co., 316 U. S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942).

29. Shell Oil Company v. Frusetta, 290 F.2d 689 (9th Cir. 1961).

30. *Id.* at 693.

31. Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 324 (4th Cir. 1937) cited in Home Indemnity Co., N.Y. v. Lechner, 191 F.Supp. 116, 119 (S.D.Cal.1961).

"The . . . statute should not be used to secure a judgment which would impinge on a state proceeding and which might result in a conflict between the decisions of state and federal courts." [32] The Act is not a substitute for an appeal from a state judgment,[33] nor does it convey to a federal court the power to review a state court decision.[34] In the appropriate exercise of its discretion, a federal court should deny declaratory relief under the same conditions wherein injunctive relief would be impermissible, *e.g.*, where the result would be interference with and disruption of state court proceedings.[35] "The statute should not be used to try a case piecemeal." [36] A final factor is whether the granting of a declaratory judgment would result in increased congestion of the federal courts.

However, the District Court was well within the exercise of its discretion in considering that Travelers chose to petition the Court of Common Pleas of Philadelphia County to vacate the award, strike the panel, and direct the panel to file an opinion in support of its award [37] long before it initiated the federal declaratory judgment action. The Court of Common Pleas denied the petition. Travelers' appeal to the Superior Court was quashed. Travelers then asked in effect that the District Court review the decision of the state courts. The District Court could not do this because comity between the federal and state court systems would be disrupted should there be a conflicting result. The defendants would not be able to determine which court to obey. Additionally, Travelers has prevented an early adjudication by its resort to the federal courts for a declaratory judgment. Furthermore, such relief would not clarify but would confuse the legal relations of the parties. Piecemeal litigation would result.[38]

32. *Home* at 119, citing H. J. Heinz Co. v. Owens, 189 F.2d 505, 508 (9th Cir. 1951). "This discretion should be exercised with proper regard for orderly federal-state judicial relationships . . . . It is well settled that the use of the declaratory judgment procedure, merely as a means to review decisions already made by the state courts, is improper . . . . ' * * * even though it were authorized to render a declaratory judgment, which we leave undecided, such a court would not exercise such power to overturn a prior judgment of a state court of concurrent and competent jurisdiction between the same parties and involving the same questions. No litigant is entitled to two declarations of the same right' (McLain v. Lance, 146 F.2d 341, 346 (5th Cir. 1944))." Savini v. Sheriff of Nassau County, 209 F.Supp. 946, 950–951 (E.D. N.Y.1962). (Citations omitted.)

33. Ruip v. Commonwealth of Kentucky, 400 F.2d 871 (6th Cir. 1968).

34. United States ex rel. Roberts v. Commonwealth of Pennsylvania, 312 F.Supp. 1 (E. D.Pa.1970). "It is well settled that a declaratory judgment action cannot be used as a substitute for the prosecution of an appeal or a motion for a new trial in the trial court . . . . [Citations omitted.] This is especially true in a situation where an attempt is made to substitute the federal declaratory judgment action for the normal pattern of review in a state court. In such a situation, comity between federal and state judicial systems is severely jeopardized." See also United States ex rel. Bennett v. Illinois, 356 F.2d 878 (7th Cir. 1966) (attempt to void a state criminal indictment).

35. Samuels v. Mackell, 401 U.S. 66, 72–73, 91 S.Ct. 764, 27 L.Ed.2d 688 (1970) (injunctive relief denied because there was no showing of great and irreparable harm through state court proceedings; declaratory relief denied on same basis, citing Great Lakes Co. v. Huffman, 319 U.S. 293, 63 S.Ct. 1070, 87 L. Ed. 1407 (1943)).

36. *Home*, note 31 *supra*, 191 F.Supp. at 119, citing Doby v. Brown, 232 F.2d 504, 506 (4th Cir. 1956).

37. The word "award" is used advisedly. Travelers' complaint in the Court of Common Pleas was similar to its complaint in the District Court with the exception that in the latter it added constitutional claims and a request for injunctive relief against Texas discovery proceedings.

38. See Home Indemnity Co. v. Lechner, 191 F.Supp. 116 (S.D.Cal.1961) (insurer denied declaratory judgment on question of duty to defend pending action in state court for policy reasons cited in preceding text).

For all the policy reasons given,[39] the District Court was correct in the exercise of its discretionary right to refuse to hear plaintiff's complaint demanding declaratory judgment.

Basically the holding of the impropriety of the declaratory judgment action is dispositive of this case and makes unnecessary a discussion of the other subsidiary issues, many of which are obviously raised for the first time on this appeal.

In summation, the Pennsylvania rule is that in common-law arbitration, which the District Court correctly held was present here, both matters of fact and of law are finally adjudicated, absent a showing of fraud or misconduct, neither of which has been alleged by the plaintiff-appellant. Accordingly, the District Court properly declined to grant a declaratory judgment on an issue which had been submitted to arbitration. Hence, the order of the District Court of March 1, 1972 will be affirmed.

**39.** Appellee has argued that appellant was estopped from bringing suit in federal court apparently because of the state court proceedings. Appellee did not, however, affirmatively raise the defense of *res judicata* as required under Fed.R.Civ.P. 8(c) and, accordingly, this decision does not rest upon that doctrine.