**Judith and James PARKER**

v.

**STATE FARM INSURANCE COMPANY.**

**Civ. A. No. 81–1838.**

United States District Court,
E. D. Pennsylvania.

July 12, 1982.

Kenneth J. Lees, Philadelphia, Pa., for plaintiff.

Peter J. Hoffman, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the Court is defendant's motion for partial summary judgment in a civil action brought to compel arbitration of plaintiffs' claims for uninsured motorist benefits allegedly due under two automobile liability insurance policies issued by the defendant. At the heart of defendant's motion is a question of choice-of-law: whether the policies are governed by Pennsylvania or Maryland law. Because the Court has concluded that Pennsylvania law applies, and that the issues raised by State Farm must accordingly be answered in plaintiffs' favor, State Farm's motion will be denied.

The facts needed to decide this motion are not in dispute. On September 11, 1979, in Chester, Pennsylvania, plaintiff Judith Parker was involved in a motor vehicle accident in which the vehicle she was operating collided with that of an uninsured motorist. Plaintiff allegedly suffered serious injuries. At the time of the accident, Judith Parker's vehicle was insured by Allstate Insurance Company ("Allstate"). Plaintiff Judith Parker made a claim for uninsured motorist benefits due under the Allstate policy, and

Allstate settled for the policy limit of $15,-000.00.

Plaintiff also made claim, however, for uninsured motorist benefits under each of two insurance policies issued by defendant State Farm to plaintiff's husband, James Parker, who is also a plaintiff in this action. In addition, Judith Parker made a demand under the policies for arbitration of her claim. State Farm refused both the claims and the demand for arbitration, and this action followed.[1]

The two insurance policies at issue here were apparently issued to plaintiff James Parker at some time prior to his marriage on October 7, 1978, to plaintiff Judith Parker. Each policy provided for uninsured motorist benefits of up to $20,000.00. Each policy also contained a clause stating that in the event of any dispute between the insured and the insurer over the insured's entitlement to uninsured motorist benefits or the amount of such benefits, the dispute would be resolved by arbitration. The policies were issued in Maryland, and set forth plaintiff James Parker's address as Box 11, Earlville, Maryland. State Farm admits that both policies were still in full force and effect at the time of the September 11, 1979 accident. By that time, however, James Parker and Judith Parker were married and living in Chester, Pennsylvania.

In its motion for partial summary judgment, State Farm sets forth basically two contentions, both of which are based upon the premise that the interpretation of the two policies in question should be governed by Maryland law. First, State Farm argues that the mandatory arbitration clause is rendered void and unenforceable by governing statute. Md.Ann.Code art. 48A, § 541(c). Secondly, State Farm contends that plaintiffs are not permitted to recover benefits for a single accident under more than one policy, except to the extent that the limit of liability of one policy is higher than that of another policy—in other words, State Farm argues that "stacking" is not permitted. *Yarmuth v. GEICO*, 286 Md. 256, 407 A.2d 315 (1979). Thus, State Farm argues that plaintiffs can only recover $5,000.00, representing the difference between the liability limit under either State Farm policy and the liability limit of the Allstate policy.

Plaintiffs do not dispute State Farm's reading of Maryland law. Plaintiffs do, however, attack State Farm's reliance upon Maryland law in the first place, and contend that, on the contrary, Pennsylvania law applies. Thus, plaintiffs maintain that the mandatory arbitration clauses are valid and enforceable, *see National Grange Mutual Insurance Co. v. Kuhn*, 428 Pa. 179, 236 A.2d 758 (1968), and that "stacking" or cumulating the uninsured motorist coverages provided for in the various policies is permitted. *State Farm Mutual Auto Insurance Co. v. Williams*, 481 Pa. 130, 392 A.2d 281 (1978); *Marchese v. Aetna Casualty and Surety Co.*, 284 Pa.Super. 579, 426 A.2d 646 (1981).

There is no dispute that the law of Maryland and Pennsylvania stands as set forth above. Thus, the essential question whose answer will determine the outcome of the case is whether the two State Farm policies are governed by the law of Maryland or the law of Pennsylvania.

In resolving a question of choice-of-law, a federal court exercising diversity jurisdiction must apply the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The most recent analysis of Pennsylvania choice-of-law rules as applied in contract actions is found in *Melville v. American Home Assurance Co.*, 584 F.2d 1306 (3d Cir. 1978). In *Melville*, the Third Circuit concluded that Pennsylvania had discarded the traditional "vested rights" approach to choice-of-law analysis in contract actions, and had replaced it with a more flexible approach combining governmental interest analysis with the grouping-of-contacts ap-

---

1. State Farm does not contend that plaintiff Judith Parker is not covered by the policies issued to James Parker.

proach adopted in the *Restatement (Second) of Conflict of Laws.* Under this approach, where there is a conflict between the applicable legal principles of two or more states whose law might arguably apply to a given situation, the Court faced with the need to choose must, as a first step, determine what governmental interests those states intended to further in adopting the respective legal principles. If only one state's interests would be advanced by the application of its law to the case at hand, then there is a "false" conflict, and the Court should apply the law of the only interested state. If, on the contrary, the interests of two or more states would be furthered by application of their respective laws, then there is a "true" conflict, and the Court must choose among the states whose interests would be served by the application of their laws.[2] In the event there is a "true" conflict, the Court must, as a second step, examine the contacts existing between the action and each of the interested states, and determine which state bears the most significant relationship to the action in respect to the particular question at hand. The issue is then resolved according to the law of that state. *See Melville v. American Home Assurance Co., supra.*

 The case now before us clearly presents an instance of a "true" conflict in respect to both the validity of mandatory arbitration clauses and the propriety of "stacking." In holding mandatory arbitration clauses to be valid and enforceable, Pennsylvania seeks to advance the state's interest in assisting its citizens in obtaining a speedy resolution of their claims by the method agreed to in the contract. Maryland, on the other hand, in declaring such clauses to be void and unenforceable, seeks to advance the interests of its citizens and persons doing business there in preserving their right to have a court decide their claims, even though they may once have been willing to waive that right by contract. In regard to "stacking," Pennsylva-

nia's rule permitting "stacking" is plainly intended to allow its injured citizens to obtain the full benefit of all coverage paid for in premiums, while Maryland's rule prohibiting "stacking" is designed to protect insurers doing business within Maryland's borders from liability that may prohibitively increase the cost of doing business there. Thus, since plaintiffs are citizens of Pennsylvania and are persons whom the applicable Pennsylvania law seeks to protect, and since defendant does business in Maryland and is within the class of persons to be protected by its law, the Court is confronted with a "true" conflict.

Having determined that a "true" conflict exists, the Court must determine which state bears the most significant relationship to the litigation in regard to the issues at hand, using the approach set forth in the *Restatement (Second) of Conflict of Laws.* Section 188 of the *Restatement* provides:

§ 188. Law Governing in Absence of Effective Choice by the Parties

(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

(2) In the absence of an effective choice of law by the parties . . ., the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

---

**2.** A third class of case is the "unprovided for case," in which no state's interests would be served by application of its law. Since we

clearly do not have such a case before us, we need not discuss the approach to be taken under such circumstances.

(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189–199 and 203.

*Restatement (Second) of Conflict of Laws* § 188 (1971). The *Restatement* also contains a provision dealing specifically with insurance policies similar to the one involved in this case, which provides:

§ 193. Contracts of Fire, Surety or Casualty Insurance

The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

*Id.* § 193. *See also id.* § 192 (life insurance policies). Finally, section 6 of the *Restatement*, referred to in both § 188 and § 193, provides as follows:

§ 6. Choice-of-Law Principles

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

*Id.* § 6.

■ In the present case, it may appear that the State Farm policies, as originally contemplated, have most of their relevant contacts with the State of Maryland. Maryland is the place where the parties resided or did business at the time of contracting, the place where the contract was negotiated and formed, and—perhaps most importantly—the state where the insured automobiles were expected to be located at the time of the policies' creation. At the time of the accident, however, Pennsylvania had become the state of James Parker's domicile and the state where the insured vehicles were principally garaged. Nevertheless, a raw count of contacts cannot decide the question. The importance of the various contacts depends on the nature of the particular contract and issues involved. *See Restatement (Second) of Conflict of Laws* § 188, Comment b (1971). Thus, even though Maryland was "the state which the parties understood to be the principal location of the insured risk during the term of the policy," the law of Pennsylvania should apply if that state "has a more significant relationship under the principles stated in § 6 to the transaction and the parties." *Id.* § 193.

In determining whether this case presents one of the exceptions to the rule stated in § 193, the Court first notes that the "location of the insured risk" is of less importance in the context of automobile liability insurance policy than it would be in the context of, for example, a policy of fire insurance for a building. The mobility of the insured risk makes it possible that an accident covered by the policies will occur in a state other than the state where the automobile is principally garaged. Furthermore, in today's mobile society, it is also foreseeable that a person covered by insurance may himself marry and move from state to state, as plaintiff James Parker did here, and, thus, wholly change his domicile and the place where the automobile is garaged. Thus, the possibility that another

state's law may be applied to determine questions arising out of automobile liability insurance policies made in Maryland cannot be totally unforeseen by an insurer in State Farm's position. Indeed, the *Restatement* notes this possibility in comments to § 193:

There may also be occasions when following the issuance of the policy the principal location of the risk is shifted to some other state. In such a situation, this other state will have a natural interest in the insurance of the risk and it may be that its local law should be applied to determine at least some issues arising under the policy. In any event, application of the local law of the other state would hardly be unfair to the insurance company, at least with respect to some issues, if the company had reason to foresee when it issued the policy that there might be a shift to another state of the principal location of the risk.

*Id.* § 193, Comment d.

Of equal or greater importance here is Pennsylvania's strong interest in protecting its citizens' rights to the full benefit of insurance provisions agreed to and coverage paid for. *See State Farm Mutual Automobile Insurance Co. v. Williams, supra,* 481 Pa. at 142–143, 392 A.2d at 287. Applying Maryland law to this case would frustrate Pennsylvania's state policy and, thus, benefit an insurer who could well have foreseen the possibility of its application. Accordingly, the Court holds that Pennsylvania law should govern the resolution of the matters at issue.

In reaching its conclusion, the Court finds additional support in the decision of the Third Circuit in *Travelers Insurance Co. v. Davis,* 490 F.2d 536 (3d Cir. 1974). In *Travelers,* a Pennsylvania citizen had been killed in Texas in the course of his employment, when he was involved in an automobile accident with an uninsured motorist. The executors of the deceased's estate filed a claim under an automobile liability insurance policy which covered forty-three vehicles owned by the deceased's employer. The policy had been issued in Massachusetts by the Travelers Insurance Company ("Travelers"). The claim went to arbitration, and the arbitrators allowed the executors to "stack" the uninsured motorist coverages for all forty-three vehicles in order to satisfy the estate's claim. Travelers eventually filed a declaratory judgment action in federal court, seeking *inter alia* a decree vacating the arbitrators' award, and a declaration that Pennsylvania law did not apply and that "stacking" was impermissible on a variety of grounds. Travelers' complaint was dismissed, and the Third Circuit affirmed the dismissal. *Id.* at 545. In the opinion in support of its decision, the Third Circuit concluded that of the three states conceivably interested—Texas, Massachusetts and Pennsylvania—Pennsylvania had the greatest interest in the application of its law. While the court acknowledged that Massachusetts was the site of the formation of the policy involved, the court concluded that "Pennsylvania's interest is the greatest because decedent and his executors are citizens of that state. Pennsylvania 'is vitally concerned with the administration of decedent's estate and the well-being of the surviving dependents. . . .' " *Id.* at 543, *quoting Griffith v. United Air Lines,* 416 Pa. 1, 25, 203 A.2d 796, 807 (1964). Accordingly, the Third Circuit concluded that Pennsylvania law should apply in determining the amount to be awarded under the policy.[3]

If Pennsylvania has a "vital" interest in the well-being of survivors of citizens killed in automobile accidents, surely its interest in the well-being of citizens injured in automobile accidents may equally be termed "vital." *Travelers'* emphasis on a state's strong interest in assuring compensation for its injured citizens and their dependents thus supports the Court's conclusion that

---

**3.** Although *Travelers* was decided prior to the Third Circuit's decision in *Melville,* the *Melville* court cited *Travelers* as an example of a Third Circuit case applying the "governmental interest" analysis expressly approved in *Melville.*

*See Melville v. American Home Assurance Co., supra,* at 1311 n.7. Such a citation suggests that the analysis adopted in *Travelers* remains valid after *Melville.*

Pennsylvania bears the most significant relationship to the transaction involved in this case.

For all of the reasons set forth above, defendant's motion for partial summary judgment will be denied.[4]

An appropriate Order will be entered.

---

**4.** Defendant State Farm recently filed a "Reply to Plaintiffs' Response to Defendant's Supplemental Memorandum Regarding Choice of Law," in which defendant asserts another reason for granting its motion for partial summary judgment. Specifically, defendant now argues that the two State Farm policies are void because plaintiff obtained the policies on the basis of a material misrepresentation of fact. This ground for summary judgment in defendant's favor is wholly new and different, and unrelated to any other argument raised previously in connection with the motion presently before the Court. Accordingly, defendant's memorandum has not been considered in deciding defendant's motion for partial summary judgment. The Court expresses no opinion, however, whether the argument asserted in defendant's memorandum may provide grounds for a new motion for summary judgment.