704 A.2d 1343

NEW JERSEY MANUFACTURERS INSURANCE COMPANY, PLAINTIFF–RESPONDENT, v. DOROTHY MACVICAR, THROUGH HER GUARDIANS, ALICE FRIEND, MARILYN MACVICAR AND THE HAZELTON NATIONAL BANK; EILEEN MACVICAR AND CHARLES FRIEND, ADMINISTRATOR OF THE ESTATE OF DONALD MACVICAR, DECEASED, DEFENDANTS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued January 27, 1998—Decided February 9, 1998.

Before Judges PRESSLER, WALLACE and CARCHMAN.

*Eugene J. Sullivan* argued the cause for appellants (*Tompkins, McGuire & Wachenfeld*, attorneys; *Michael S. Miller*, of counsel; *Mr. Sullivan*, on the brief).

*Brian G. Steller* argued the cause for respondent (*Connell, Foley & Geiser*, attorneys; *Mr. Steller*, of counsel; *Lisa M. Fontoura*, on the brief).

The opinion of the court was delivered by

PRESSLER, P.J.A.D.

The question before us is whether the law of New Jersey or Pennsylvania governs the determination of defendant-insureds' entitlement to stacking of the underinsured motorist (UIM) benefits afforded by the automobile policy issued to them by plaintiff New Jersey Manufacturers Insurance Company (NJM). We conclude that in the circumstances before us, Pennsylvania law, which provides for stacking, applies. Accordingly, we reverse the summary judgment entered in favor of NJM, we reverse the denial of defendant's cross motion for summary judgment, and we remand for an order submitting the matter to UIM arbitration in Pennsylvania.

The critical facts are undisputed. NJM issued a family automobile policy to Donald MacVicar on November 21, 1991. The policy covered three insureds, MacVicar, his wife Dorothy MacVicar, and his daughter Eileen MacVicar. Three vehicles were insured, a

1975 Ford, a 1970 Ford, and a 1991 Ford. The liability limits for each of the three vehicles was $500,000 for each accident, and the UIM coverage for each of the vehicles was also $500,000. The family was living in Linden, New Jersey, when the policy was issued and the three vehicles were then garaged there.

On June 30, 1992, while the policy was still in force, the MacVicar family moved to Carbon County, Pennsylvania, after having given NJM telephone notice of their proposed move. Although the record does not indicate whether there was any intervening communication between the MacVicars and NJM, it leaves no doubt that on July 27, 1992, after the move to Pennsylvania, there was a telephone conversation between Mrs. MacVicar and an NJM customer service representative, Elizabeth Landauer. We were advised by NJM's counsel at oral argument that because the MacVicars had moved to Pennsylvania, their options were either to obtain a Pennsylvania NJM policy or to obtain a Pennsylvania policy from another company. Presumably, they opted to keep their coverage with NJM, since the import of the telephone call was the making by Mrs. MacVicar of an application for a Pennsylvania policy. That application shows that the Pennsylvania coverage was not bound as of that date, apparently because the New Jersey policy had not yet been canceled and apparently too because, as Landauer explained in her certification in support of the motion, it was necessary for her to obtain a premium quotation which would take several days. In any event, it is clear that Landauer filled in the application form, which notes that it was Mrs. MacVicar who was making the oral telephone application. Landauer's certification in support of NJM's summary judgment motion, which inconsistently asserts that she took the information from Mr. MacVicar, also asserts that she fully explained all the available options to him and that he verbally waived stacking of UIM and uninsured motorist benefits. The coverage limits chosen during that telephone conversation were the same as those of the New Jersey policy, namely, $500,000 for liability and $500,000 for UIM.

On July 31, 1992, before Landauer was able to communicate a premium quotation to the MacVicars and before, therefore, she sent the application and other required forms to them for signature, the family was involved in a catastrophic accident while Mrs. MacVicar was driving one of the insured vehicles in which her husband and her daughter were passengers. The MacVicar vehicle was hit head-on in its own lane of traffic by a driver whose liability coverage was $35,000 and whose passenger also made a claim against him. In any event, as a result of the accident, Mr. MacVicar was killed and Mrs. MacVicar was so gravely injured as to have been left in a chronic vegetative state. The daughter was less seriously injured suffering a dislocated right hip and multiple abrasions.

Because the Pennsylvania coverage had not yet been bound, the New Jersey policy was still in force when this accident occurred, and this dispute immediately arose. The MacVicars' Pennsylvania lawyer asserted that the family was entitled to stacked UIM coverage of $1,500,000. NJM asserted that since the New Jersey policy was in effect, New Jersey's anti-stacking law applied, limiting UIM coverage to the $500,000 per accident provided for each vehicle. NJM then brought this action for a declaration of the applicability of New Jersey law to the policy.[1] On motion and cross motion for summary judgment, the trial court agreed with NJM's position and entered judgment accordingly. We conclude that it erred.

To begin with, it is clear that the respective laws of New Jersey and Pennsylvania are diametrically opposed with respect to UIM stacking. New Jersey's anti-stacking law, *N.J.S.A.* 17:28–1.1c, which overruled *Lundy v. Aetna Cas. & Sur. Co.*, 92 *N.J.* 550, 458 *A.*2d 106 (1983), and *Motor Club of America Ins. Co. v. Phillips*, 66 *N.J.* 277, 330 *A.*2d 360 (1974), provides as follows:

---

[1] Although the issue is not here directly raised, we have no doubt that despite the broad scope of the UIM arbitration clause, the choice of law question remains judicially determinable in a declaratory judgment action.

> Uninsured and underinsured motorist coverage provided for in this section shall not be increased by stacking the limits of coverage of multiple motor vehicles covered under the same policy of insurance nor shall these coverages be increased by stacking the limits of coverage of multiple policies available to the insured. If the insured had uninsured motorist coverage available under more than one policy, any recovery shall not exceed the higher of the applicable limits of the respective coverages and the recovery shall be prorated between the applicable coverages as the limits of each coverage bear to the total of the limits.

If New Jersey law were to apply to this policy, then the MacVicar family would be limited to a total UIM coverage for all three members of $500,000. Pennsylvania law, on the other hand, mandates stacking of UIM coverage unless waived in writing by the insured in the precise manner prescribed by statute. Thus, the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 *Pa. Cons.Stat. Ann.* § 1738 (1990), provides in full as follows:

*Stacking of uninsured and underinsured benefits and option to waive.*

(a) Limit for each vehicle. When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured. The limits of coverage available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured.

(b) Waiver. Notwithstanding the provisions of subsection (a), a named insured may waive coverage providing stacking of uninsured or underinsured coverage in which case the limit of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured.

(c) More than one vehicle. Each named insured purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage and instead purchase coverage as described in subsection (b). The premium for an insured who exercises such waiver shall be reduced to reflect the different cost of such coverage.

(d) Forms.

(1) [Uninsured waiver form]

(2) The named insured shall be informed that he may exercise the waiver of the stacked limits of underinsured motorist coverage by signing the following written rejection form:

## UNDERINSURED COVERAGE LIMITS

By signing this waiver, I am rejecting stacked limits of underinsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle

insured under the policy. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.

_____

Signature of First Named Insured

_____

Date

(e) Signature and date. The forms described in subsection (d) must be signed by the first named insured and dated to be valid. Any rejection form that does not comply with this section is void.

Consequently, if Pennsylvania law were to apply to this policy, the MacVicar family would be entitled to $1,500,000 in UIM coverage.

■ The issue is simply one of choice of law, and we are persuaded that the choice of Pennsylvania law is dictated by the well-settled principles underlying this state's conflicts-of-law jurisprudence in respect of insurance contracts. At the outset, we note that we have long since rejected a mechanical application of the traditional test of the place of the making of the contract in favor of the governmental interest test and the "most significant relationship" standard of the *Restatement (Second) of Conflict of Laws*, § 188 (1971). *See State Farm, etc. Ins. Co. v. Simmons' Estate*, 84 *N.J.* 28, 37, 417 *A.*2d 488 (1980), in which the Court explained that

Accordingly, we conclude that the proper approach in resolving conflict-of-law issues in liability insurance contract controversies is that which may be synthesized from this post-*Buzzone* evolution of the law in both the contract field as well as in the somewhat related tort field, particularly in the area of automobile accident litigation. This calls for recognition of the rule that the law of the place of the contract ordinarily governs the choice of law because this rule will generally comport with the reasonable expectations of the parties concerning the principal situs of the insured risk during the term of the policy and will furnish needed certainty and consistency in the selection of the applicable law. [*See Buzzone v. Hartford Accident & Indemnity Co.*, 23 *N.J.* 447, 129 *A.*2d 561 (1957)].... At the same time, this choice-of-law rule should not be given controlling or dispositive effect. It should not be applied without a full comparison of the significant relationship of each state with the parties and the transaction. That assessment should encompass an evaluation of important state contacts as well as a consideration of the state policies affected by, and governmental interest in, the outcome of the controversy.

*See also Gilbert Spruance v. Pennsylvania Mfrs.,* 134 *N.J.* 96, 112, 629 *A.*2d 885 (1993), emphasizing again that with respect to insurance contracts, the law of the place understood by the parties to be the principal location of the risk controls unless some other state has a more significant relationship. *See also Canal Ins. v. F.W. Clukey Trucking,* 295 *N.J.Super.* 131, 684 *A.*2d 953 (App.Div. 1996); *Hertz Claim Management v. Marchetta,* 281 *N.J.Super.* 190, 656 *A.*2d 1298 (App.Div.1995); *Chalef v. Ryerson,* 277 *N.J.Super.* 22, 648 *A.*2d 1139 (App.Div.1994); *Muto v. Kemper Reinsurance Co.,* 189 *N.J.Super.* 417, 460 *A.*2d 199 (App.Div.1983).

Applying the test of § 193 of the *Restatement,* we think it plain that the parties understood that as of the date of the MacVicars' move to Pennsylvania, a date and an event of which NJM indisputably had notice prior to the accident, Pennsylvania would be the principal location of the risk. The insureds all resided there. The covered vehicles were all garaged there. The insureds would be doing all their local driving there. NJM, moreover, by its undertaking to issue a new Pennsylvania policy, clearly acknowledged its understanding that the *locus* of the risk had been transferred to Pennsylvania and that Pennsylvania insurance law was the appropriate law to govern its relationship with its insured. Indeed as a general proposition respecting the parties' understanding of the location of the risk, we think it clear that every automobile insurer is on notice that because of the mobility both of automobiles and their owners, the circumstances of a particular loss may well result in the applicability of the law of a state other than that in which the policy was issued, and that that is hence a predicate of the risks they underwrite. *See,* so recognizing, *Parker v. State Farm Ins. Co.,* 543 *F.Supp.* 806 (E.D.Pa.1982). Indeed, NJM itself so acknowledged in this policy by providing, with respect to liability coverage, that if the accident occurred in a state with higher minimum mandatory coverage limits than New Jersey, the law of that other state would apply. We are thus satisfied that no state had a more significant relationship with this risk than did Pennsylvania. New Jersey's relationship as the

place where the policy was initially issued plainly became tangential after the severance of all other ties and connections here.

We also think it clear that application of a governmental interest analysis points inexorably to Pennsylvania as well. Pennsylvania's UIM stacking law is obviously predicated on its firm public policy of affording its residents the full advantage of all the insurance they have purchased. *See, e.g., Travelers Insurance Co. v. Davis,* 490 *F.*2d 536 (3rd Cir.1974); *Parker v. State Farm Ins. Co., supra; Erie Indem. Co. v. McGaughey,* 409 *Pa.Super.* 177, 597 *A.*2d 718 (1991); *Tallman v. Aetna Cas. & Sur. Co.,* 372 *Pa.Super.* 593, 539 *A.*2d 1354, *appeal denied,* 520 *Pa.* 607, 553 *A.*2d 969 (1988). Pennsylvania's commitment to that policy is, indeed, so strong that it prescribes the exact form of the verbiage that an insured must assent to in writing before he will be deemed to have waived the benefit of that law. We see no interest of New Jersey as of the date of this loss that could possibly override that of Pennsylvania.

For these reasons, the federal courts have recognized, in circumstances similar to those here, the primacy of Pennsylvania's interest in the application of its stacking law for the benefit of its residents despite the issuance of the policy in an antistacking state. Thus, in *Travelers Insurance Co. v. Davis, supra,* the Third Circuit opted for Pennsylvania's stacking law where the policy had been issued in Massachusetts, the insured resided in Pennsylvania, and the fatal accident occurred in Texas. In choosing Pennsylvania law, the court explained that "Pennsylvania's interest is the greatest because decedent and his executors are citizens of that state. Pennsylvania 'is vitally concerned with the administration of decedent's estate and the well-being of the surviving dependents....'" *Travelers Insurance Co., supra,* 490 *F.*2d at 543. And in *Parker v. State Farm Ins. Co., supra,* policies had been issued in Maryland under Maryland law to a Maryland resident that were in full force and effect at the time of the accident. The accident, however, occurred in Pennsylvania, the state to which the insured had by then moved and in which he was then residing. In concluding that Pennsylvania insurance law

applied, the court relied both on the location of the insured risk and on Pennsylvania's strong interest in protecting the right of its citizens to statutory coverage. *Parker, supra,* 543 *F.Supp.* at 811.

There are several additional arguments we must address. We are aware that the NJM New Jersey policy contained an anti-stacking provision. Clearly, however, that is not dispositive since if Pennsylvania law applies to the coverage, the simple answer is that under Pennsylvania law the anti-stacking provision is void and unenforceable as contrary to the stacking statute.

NJM also argues that even if Pennsylvania law does apply, we should deem the MacVicars to have waived the benefit of stacking by reason of their asserted oral statement to that effect to the customer service representative. We decline to do so. We do not address the MacVicars' challenge to the integrity of the information on the application that the customer service representative filled in. Neither Mr. or Mrs. MacVicar are available to contradict it, and their challenge must therefore remain speculative. We do not, however, view the application as dispositive even if the information thereon had actually been elicited from the MacVicars and correctly recorded. As we read the Pennsylvania law, a written waiver executed by the insured is mandated before the insured can be deemed to have given up the right to stacking. We think it plain that the statutory verbiage is intended to call the insured's attention to that valuable right and thus to afford him the opportunity to reconsider a prior verbal waiver and to make further inquiry of the insurer regarding either the waiver or the nature of the coverage waived. Thus, as we understand the thrust of Pennsylvania law, there can be no effective waiver until that last clear opportunity has been afforded and the insured chooses to sign the waiver. That, of course, did not happen here. Since there was, therefore, no effective waiver, the stacking provision of the law is unaffected.

We therefore hold that the MacVicar family is entitled to arbitration of their UIM claims under Pennsylvania law. There

being nothing in the record to suggest any difference between a New Jersey policy and a Pennsylvania policy or between New Jersey law and Pennsylvania law in this regard, we see no reason why the arbitration should not take place as provided for in this policy.

The summary judgment in favor of plaintiff and the denial of defendants' motion for summary judgment are reversed and we remand for further proceedings consistent with this opinion.