Robert ADAMS, Appellant,

v.

**ONE PARK PLACE INVESTORS, LLC, and, William Foote, Respondents.**

**No. WD 71652.**

Missouri Court of Appeals, Western District.

June 29, 2010.

Joseph R. Colantuono and Katherine I. Tracy, Overland Park, KS, for appellant.

Curtis E. Woods and Jason R. Scheiderer, Kansas City, MO, for respondents.

Before Division Three: JAMES M. SMART, JR., Presiding Judge, JOSEPH M. ELLIS, Judge and GARY D. WITT, Judge.

GARY D. WITT, Judge.

Robert Adams filed suit against One Park Place Investors, LLC ("OPPI") and William Foote based on Adams's claims against those parties pertaining to the termination of his employment as the Project Director for a construction and development project converting the BMA Tower in Kansas City, Missouri, from an office building into residential condominiums. For the reasons explained below, we affirm in part and reverse in part.

**Factual Background**

In November of 2004, Adams and OPPI allegedly entered into an oral contract, wherein OPPI agreed to employ Adams as the Project Director for the residential condominium project. William Foote, as the Managing General Partner of OPPI, negotiated the contract on behalf of OPPI. Subsequently, in January 2007, Foote, on behalf of OPPI, notified Adams that his employment with OPPI was terminated immediately.

On May 11, 2007, Adams filed the instant lawsuit in Jackson County Circuit Court against OPPI and Foote. As pled in his First Amended Petition, Adams brought three counts, all of which sought monetary relief. Count One was a breach of contract claim brought solely against OPPI. Count Two was an unjust enrichment claim brought exclusively against OPPI. Count Three was a "misrepresentation" claim against OPPI and Foote pursuant to the California Labor Code, Section 970.

In part because this case was assigned at differing times to three different judges, the procedural history pertaining to the dispositive motions filed by OPPI is somewhat convoluted.

On January 29, 2008, OPPI filed a motion for summary judgment as it pertained to Counts One and Two. After extensive briefing by the parties, the trial court granted this motion in part by entering a judgment on June 26, 2008, dismissing Count One, the breach of contract claim against OPPI. However, the trial court denied the motion as it pertained to Count Two, the unjust enrichment claim against OPPI.

On August 26, 2008, Adams filed its First Amended Petition. Thereafter, on

January 5, 2009, OPPI and Foote filed its Motion to Dismiss Count Three of the Amended Petition.

After various briefing by the parties, the trial court entered an order [1] on February 2, 2009, dismissing Count Three of Adams's Petition as it pertained to both OPPI and Foote. Additionally, in this same order, the Court "reinstituted" Count I of Adams's Petition "as a valid and pending claim by plaintiff."

On March 4, 2009, the trial court entered another order denying Adams's motion to reconsider its ruling in dismissing Count Three of Adams's Petition.

On September 4, 2009, OPPI filed its "Renewed Motion for Summary Judgment," which sought judgment against Adams's claims as it pertained to Count One and Two of his Amended Petition. After various briefing by the parties, the trial court entered its judgment on September 22, 2009, that, *inter alia*, granted OPPI's motion for summary judgment as it pertained to Counts One and Two of the Petition. However, this judgment did not rule on or dispose of Count Three of Adams's Petition against Foote.

On May 11, 2010, the trial court issued its *nunc pro tunc* judgment, which stated that the "September 22, 2009 Judgment is amended to dispose of all claims, including Count I–III, against all parties, including [OPPI and Foote]."

Adams now appeals.[2]

### Analysis

#### I. Motion For Summary Judgment

■ In Point One, Adams argues that the trial court erred in granting summary

1. Which was not denominated a "Judgment."

2. Adams brings six Points Relied On, five of which pertain to the motion for summary judgment. Accordingly, these issues will be

judgment as it pertained to his contract claim in light of the fact it erroneously applied "Missouri law to Adams' breach of contract claim because California law applies in that Missouri's conflict of laws principles require application of California law."

"We review a circuit court's summary judgment *de novo*." *Ascoli v. Hinck,* 256 S.W.3d 592, 593 (Mo.App. W.D.2008) (citing *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993)). "Summary judgment is proper only when the parties are not genuinely disputing material factual issues and when the moving party is entitled to judgment as a matter of law." *Id.* "When we review a circuit court's summary judgment, we view the record in the light most favorable to the party against whom the circuit court entered judgment." *Id.* at 593–94.

■ "Conflict of laws questions are to be answered by applying our own state's conflict of laws doctrines." *Farmers Exch. Bank v. Metro Contracting Servs., Inc.,* 107 S.W.3d 381, 391 (Mo.App. W.D.2003). In resolving a conflict of laws question, Missouri courts rely on the Restatement (Second) of Conflict of Laws. *Id.* Specifically, in contract cases, Missouri courts have adopted the Restatement (Second) of Conflict of Laws, Section 188, test that states that "the law of the state where the predominant contract interests lie will be applied." *Ranch Hand Foods, Inc. v. Polar Pak Foods, Inc.,* 690 S.W.2d 437, 441 (Mo. App. W.D.1985).

Section 188 provides that the following factors are to be considered:

analyzed together herein, with the sole Point Relied On pertaining to the motion to dismiss (Point Four) being analyzed last.

(a) the place of the contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

RESTATEMENT (SECOND) CONFLICT OF LAWS § 188 (1971).

"In considering these five factors, we also apply the choice of law principles of section 6 of the Restatement (Second) Conflict of Laws." *Accurso v. Amco Ins. Co.*, 295 S.W.3d 548, 552 (Mo.App. W.D. 2009) (citing *Armstrong Bus. Servs., Inc. v. H & R Block*, 96 S.W.3d 867, 872 (Mo. App. W.D.2002)). These principles are the following:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

*Id.* at 553.

Here, in granting summary judgment in favor of OPPI, the trial court found that Missouri law applied, and in so concluding the court stated the following:

The parties agree the employment agreement at issue was negotiated and made in California. However, the remaining factors weigh in favor of the use of Missouri law. The subject matter of the contract—the Project—was located in Missouri. Adams worked on the Project from California for a time, but his efforts—making contacts and gathering information—were concentrated in Missouri. Adams traveled to Missouri numerous times to conduct business concerning the Project. Eight-five percent of his time in 2004 was spent in Missouri. In early 2005, he moved to Missouri and according to his Amended Petition, he currently resides here. OPPI's principle (sic) place of business is Missouri. Adams paid Missouri income taxes. Clearly, Adams' place of employment was Missouri. Finally, the termination of the contract at issue—the alleged breach—took place in Missouri. The predominant contract interests are in Missouri, and Missouri law should be applied.

In applying the five elements of Section 188 to the instant case, it is apparent that a majority of these factors compel that Missouri law should be applied to the instant dispute. To begin with, as it pertains to both "the place of performance" of the contact and "the location of the subject matter of the contract," there can be no dispute that both elements suggest that Missouri law should apply because Missouri is where the relevant building was located that was transformed into condominiums as contemplated by the contract. While he argues on appeal that a small portion of his work on this project took place in California, Adams does not dispute the trial court's finding that his work was "concentrated in Missouri." Simply put, Adams has failed to demonstrate that the above findings and conclusions are somehow in error.

■ Moreover, as it pertains to "the domicile, residence, nationality, place of incorporation and place of business of the

parties," Adams contends that California is his legal residence because this is where he lived while negotiating the relevant contact and this is where he returned to "after his termination." But these arguments ignore the fact Adams averred in his Petition that he "is an individual residing in Kansas City, Jackson County, Missouri." When determining residency pursuant to Section 188, we attach significance to where the individual or entity resided when the Petition was filed. *Rivers v. Rivers,* 21 S.W.3d 117, 122 (Mo.App. W.D. 2000). Adams further contends that he "only resided in Kansas City because Foote (OPPI) required him to re-locate to Kansas City as part of the employment offer," but he fails to cite any supporting authority that this fact is relevant to our analysis.

Furthermore, Adams contends that "OPPI's primary business address is in Newport Beach, California." Again, Adams ignores that his own pleadings belie this assertion because he averred that OPPI "is a limited liability company organized under the laws of the State of Delaware in November of 2004, and authorized to transact business in the State of Missouri, *with a principle [sic] place of business in Kansas City, Jackson County, Missouri.*" (Emphasis added). While it is true that Foote resided in California during the relevant period of time in question, we believe this fact carries less significance because (1) Foote was merely an employee of OPPI and (2) Adams alleged that he entered into the relevant contract with OPPI, not Foote.

The only factors that weigh in favor of applying California law are: California was

the place where the contract was entered into, and California was the place where the contract was negotiated.[3] Therefore, we believe the trial court correctly concluded that the other factors as outlined above outweighed the fact that contract was negotiated and entered into in California and that, therefore, Missouri law applied pursuant to Section 188.

Finally, Adams argues that the trial court improperly focused on the payment of income taxes in Missouri and the occurrence of the breach in Missouri as factors in its decision to apply Missouri law and that these issues don't fit within the factors to be considered under Section 188. But in making this argument, Adams ignores the fact that this Court has previously held that the trial court is allowed to consider other factors beyond those outlined in Section 188. *Accurso,* 295 S.W.3d at 552. Specifically, as outlined above, there are seven other factors to consider in section 6 of the Restatement (Second) Conflict of Laws. *Id.* at 553. For example, in considering the last factor outlined in Section 6 (the "ease in the determination and application of the law to be applied"), we cannot conclude that the trial court somehow erred in considering the undisputed fact that Adams paid taxes in Missouri and the breach of the contract occurred in Missouri.

For all of these reasons, Point One is denied.

■ Adams argues in Point Two that the "trial court erred in granting summary judgment on Adams' breach of contract claim because, *under California law,* the statute of frauds is not a defense to Adams' breach of contract claim." (Em-

---

3. OPPI attempts to argue on appeal that the contract was negotiated in Missouri, but we agree with the trial court's conclusion in this regard that the "parties agree[d] the employment agreement at issue was negotiated and made in California." For example, in its motion for summary judgment, OPPI states it "does not dispute that the alleged 'handshake agreement' giving rise to the alleged verbal employment contract occurred in California."

phasis added.) This Point Relied On need not detain this Court because Adams makes clear that his argument is predicated on the assumption that California law should apply to the instant dispute. However, because the trial court did not err in concluding that Missouri law applied in granting summary judgment for the reasons outlined at length in Point One, Adams's argument that California law requires reversal must fail.

Point Two denied.

■ In Point Three, Adams argues that "the trial court erred in granting summary judgment on Adams' breach of contract claim because Adams' contract was not barred by the statute of frauds under California or Missouri law, in that the contract was capable of performance within one year."

When granting OPPI's motion for summary judgment as it pertained to Adams's breach of contract claim, the trial court found the following:

> Contracts such as the one at issue here are governed by the Missouri Statute of Frauds which requires any such contract to be in writing and capable of being performed in one year. Section 432.010.[4] Adams has admitted his employment contract was not in writing and the terms were not capable of com-

pletion within one year, but he argues OPPI should still be held liable under a theory of promissory estoppel. Courts have held, however, this defense is barred from application when the underlying contract violates the Missouri Statute of Frauds. Therefore, his breach of contract claim fails as a matter of law and must be dismissed.

Adams does not dispute that if the oral contract in question was not capable of being performed within one year it is barred pursuant to the Statute of Frauds. Section 432.010. Adams contends on appeal that the evidence before the trial court demonstrated that the contract in question was in fact "capable of performance within one year." However, Adams's position on appeal is inconsistent and untenable in light of the express admissions he made before the trial court.

Prior to filing its motion for summary judgment, OPPI served Adams with requests for admissions pursuant to Rule 59.01(a).[5] That discovery included two relevant requests for admissions, and Adams's responses follow each individual request:

> 1. The verbal agreement alleged in paragraphs 8 and 9 of the Petition was not to be performed within one year

---

4. All statutory citations are to RSMo 2000, as updated through the 2009 Cumulative Supplement, unless otherwise indicated. Section 432.010 states the following:

No action shall be brought to charge any executor or administrator, upon any special promise to answer for any debt or damages out of his own estate, or to charge any person upon any special promise to answer for the debt, default or miscarriage of another person, or to charge any person upon any agreement made in consideration of marriage, or upon any contract made for the sale of lands, tenements, hereditaments, or an interest in or concerning them, or any lease thereof, for a longer time than one year, or upon any agree-

ment that is not to be performed within one year from the making thereof, unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person by him thereto lawfully authorized, and no contract for the sale of lands made by an agent shall be binding upon the principal, unless such agent is authorized in writing to make said contract.

5. Unless otherwise indicated, all rule references are to the Missouri Supreme Court Rules (2010).

from the time the alleged verbal agreement was made.

**Response: Admitted.**

2. The verbal agreement alleged in paragraphs 8 and 9 of the Petition could not be performed within one year from the time the alleged verbal agreement was made.

**Response: Admitted.**

On appeal, Adams fails to directly address the fact that he expressly admitted that the contract in question could not be performed within one year. "To be entitled to a summary judgment, Plaintiff was required to establish that it had a right to a judgment as a matter of law by showing, in the manner provided in Rule 74.04, that there was no genuine dispute as to those material facts upon which it would have the burden of persuasion at trial." *Dana Commercial Credit Corp. v. Cukjati*, 880 S.W.2d 612, 615 (Mo.App. S.D.1994). "Matters admitted pursuant to a request for admissions under Rule 59.01 may be used to make that showing." *Id.* (citing Rule 74.04(c)).

Adams's previous admissions are dispositive of this Point Relied On. Adams argues on appeal that he in fact denied that the contract could not be performed within one year and denied that it was not capable of performance within one year. To support this assertion, Adams cites to his memorandum in opposition to OPPI's motion for summary judgment, which *attempted* to controvert that which he had previously admitted. Attached to Adams's memorandum was Exhibit A, which purported to be his "Supplemental Responses to Defendant's Requests for Admissions" that attempts to rescind his previous admissions in this regard.

Had he wished to withdraw or amend his previous admissions, Adams was required to file a motion to that effect and to have that motion granted by the trial court. Rule 59.01(b). Adams failed to file such a motion and, therefore, was not entitled to any such relief from his previous admissions as a matter of law. *Dynamic Computer Solutions, Inc. v. Midwest Mktg. Ins. Agency, L.L.C.,* 91 S.W.3d 708, 715 (Mo.App. W.D.2002). "The matters admitted under the rule bind the party to whom the requests were addressed and eliminates the need for further proof of the matters admitted." *Dynamic Computer,* 91 S.W.3d at 715.

For all of these reasons, Point Three is denied.

■ In Point Five, Adams argues that the trial court erred in granting summary judgment on his unjust enrichment claim "because a genuine issue of material fact exists regarding whether OPPI unjustly retained a benefit Adams conferred to it without paying its reasonable value, in that OPPI terminated Adams prior to completion of the project but retained the investment rights to the project."

We set forth the following applicable principles for an unjust enrichment claim in *Executive Board of Missouri Baptist Convention v. Windermere Baptist Conference Center,* 280 S.W.3d 678 (Mo.App. W.D.2009):

> The elements of unjust enrichment are: (1) that the defendant was enriched by the receipt of a benefit; (2) that the enrichment was at the expense of the plaintiff; and (3) that it would be unjust to allow the defendant to retain the benefit. The third element, unjust retention of the benefit, is considered the most significant and the most difficult of the elements. Mere receipt of benefits is not enough, absent a showing that it would be unjust for the defendant to retain the benefit.

*Id.* at 697 (citations and quotations omitted).

In dismissing Adams's unjust enrichment claim, the trial court found that the claim failed "because OPPI was not enriched at Adams' expense" in light of the fact that "OPPI retained no benefit after Adams' termination" and also because "OPPI paid Adams according to their agreement." In so concluding, the trial court made the following findings of fact, which Adams does not dispute on appeal:

Adams was paid $180,000 per year plus vehicle allowance and costs while he acted as project manager. Adams admits he was reimbursed for the expenses he incurred in connection with the Project, and he did not pass up other employment or investment opportunities as a result of the Project. Adams remains entitled to fifty percent of any profits from the Project, even though he was terminated as project manager. Adams also testified the payment to him for the value of the services he provided as project manager, while he was project manager, was reasonable.

Without any supporting authority, Adams argues that whether he was fairly compensated for his employment with OPPI "is not relevant to the issue of whether OPPI unjustly retained the *investment opportunity*" and therefore "the trial court should not have considered Adams' wages as Project Manager as reasonable payment for the remaining 5 years worth of *investment opportunity* that he did not receive." (Emphasis added). We disagree.

To have a viable unjust enrichment claim, Adams was required to demonstrate that OPPI was *unjustly* enriched at the expense of Adams. *Executive Bd. of Mo.* *Baptist Convention*, 280 S.W.3d at 697. Adams states that OPPI was unjustly enriched because "OPPI unjustly retained the *investment opportunity*." Even when reviewing the record in the light most favorable to Adams, it is clear that the "investment opportunity" that Adams speaks of must mean his *labor* as Project Manager, for which he was *indisputably* compensated.[6]

Specifically, Adams has made no claim that OPPI was unjustly enriched because he deposited resources, other than his labor, into the former BMA building. This is in contrast to *Zipper v. Health Midwest*, where Dr. Zipper, after losing staff privileges with a medical center corporation brought, *inter alia*, an unjust enrichment claim against the corporation. 978 S.W.2d 398, 412–13 (Mo.App. W.D.1998). Specifically, prior to being discharged by the corporation, Dr. Zipper personally "expended approximately $125,000 renovating" the corporation's Medical Building and "Dr. Zipper introduced evidence establishing that the building was worth $150,000 before the renovations and between $230,000 and $270,000 after the renovations." *Id.* Based on the fact that the corporation refused "to sell the building to Dr. Zipper or compensate him for the renovations establish[ed] circumstances in which retention without payment would be inequitable and, thus," this Court concluded that "Dr. Zipper has adduced sufficient facts to defeat summary judgment on the theory of unjust enrichment." *Id.*

Simply put, Adams makes no allegation in the instant lawsuit similar to that in *Zipper.* The gravamen of Adams's claim is that "OPPI terminated Adams approxi-

---

**6.** We note that Adams originally alleged in his Petition that he "provided valuable services to OPPI that exceeded the value of the compensation that OPPI has paid to Adams." For whatever reason, however, Adams conceded this issue during the litigation of this claim, and therefore OPPI cannot be considered to have been unjustly enriched by Adams's labor.

mately 5 years prior to Adams realizing the full, reasonable value of the investment opportunity he provided to OPPI because OPPI's projected date for selling all of the condo units is approximately February 2012." But Adams does not dispute on appeal that pursuant to his agreement with OPPI he was an employee at will. Had he wished to ensure his employment with OPPI through 2012, Adams should have sought to negotiate a written contract that expressly stated those terms.[7]

■ Finally, in granting summary judgment on Adams's unjust enrichment claim, the trial court made an express finding that OPPI's conduct was not wrongful. To determine whether it would be unjust for the defendant to retain the benefit, the trial court may consider whether any wrongful conduct by the defendant contributed to the plaintiff's disadvantage. *Graves v. Berkowitz*, 15 S.W.3d 59, 61 (Mo.App. W.D.2000). Because Adams has failed to demonstrate that there were material facts in dispute to demonstrate that trial court's above findings and conclusions were somehow in error, we deny this Point.

■ In Point Six, Adams argues that the trial court erred in granting OPPI's motion for summary judgment because the "motion was not fully briefed as required by Missouri Rule of Civil Procedure 74.04(c)(3) and (6), in that Adams' response to the [ ] motion included additional material facts that OPPI did not respond to prior to the trial court ruling on the renewed motion." We disagree.

Here, there can be no doubt that after Adams filed its response in opposition to OPPI's motion for summary judgment,

*OPPI* had a right to file a reply in support of the motion for summary judgment. *See* Rule 74.04(c)(3). However, prior to OPPI filing such a reply, the trial court entered an order granting OPPI's motion for summary judgment.

Adams argues that "Missouri courts have recognized that the 'terms of Rule 74.04(c) are mandatory and failure to comply requires reversal,'" but he ignores the fact that both of the cases he relies on in this appeal illustrate that reversal is only required upon a showing of prejudice. (Quoting *Murphy v. Middleton*, 256 S.W.3d 159, 162 (Mo.App. S.D.2008)).

In *Murphy*, after plaintiff submitted its evidence at trial, defendants made an oral motion for summary judgment that the trial court granted. 256 S.W.3d at 161–62. On appeal, the Southern District acknowledged that "clearly, *none* of the requirements of Rule 74.04(c) were complied with" because among other things defendants "did not submit a written motion for summary judgment with any undisputed facts" in addition to the fact that Plaintiff "was not given notice or time to respond." *Id.* at 162 (emphasis added). "Despite the failure to comply with Rule 74.04(c)," the Southern District concluded that the trial court did not commit reversible error because the error was merely "technical" since "the result was a judgment on the merits under Rule 73.01(b)" in light of the fact "[t]he court made its ruling based upon the evidence that it heard and ruled under the facts and the law that [plaintiff] had not made her case." *Id.* at 162–63. Hence *Murphy* was not a summary judgment case at all, but a ruling on a Motion for Judgment (or Directed Verdict) at the Close of Plaintiff's Evidence.

---

7. This would be an appropriate case to apply the VanPelt Doctrine. This Doctrine holds that if the parties wanted a provision in a contract they should have stated it in the contract. We will not create a provision by judicial fiat that the parties could have easily provided for when they negotiated the agreement.

Similarly, Adams's reliance on *Morley v. Henske* is misplaced. 704 S.W.2d 298, 299 (Mo.App. E.D.1986). In *Morley,* during a discovery motion hearing, plaintiff "made an oral motion for summary judgment," and in response the trial court "denied [defendant]'s request for an opportunity to respond to the motion and immediately granted summary judgment in favor of [plaintiff] on the issue of liability alone." *Id.* Defendant then requested that the trial court "enter Findings of Fact and Conclusions of Law" on the summary judgment motion, and that "the court comply with Rule 74.04(d) by entering its order specifying which facts are uncontroverted." *Id.* Because "[t]hese requests were ignored by the court," the Eastern District concluded that the court's ruling upon the motion for summary judgment was "prejudicially erroneous." *Id.*

Here, Adams fails to demonstrate any prejudice, even if we assume there was a procedural abnormality in the trial court's grant of summary judgment. Adams's sole attempt to demonstrate prejudice is predicated on his argument that his motion in opposition to summary judgment contained "additional statements of fact" that "if uncontroverted, would defeat" OPPI's motion for summary judgment. Similarly, Adams argues that if OPPI had controverted these statements of fact, "then summary judgment would be completely improper because genuine issues of material fact would exist." *Id.* To support this claim, Adams cites to the following two "additional uncontroverted material facts" contained in his response:

> 39. Adams understood that he would be the Project Manager for the duration of the Project "as long as Mr. Foote was receiving compensation from the project" and that when Foote's compensation for any role he had in the Project, outside of his profit share ended, Adams' compensation would end at the same

time. (regarding the statute of frauds defense to Adams' Contract).

> 42. Adams would not have arranged for Foote's participation in the Project or relocated to Kansas City from California if Foote had not agreed to employ Adams as the Project Manager for the duration of the Project. (regarding Adams' unjust enrichment claim).

Neither of these two "additional uncontroverted material facts" demonstrate that Adams was somehow prejudiced in this matter because they were immaterial to the trial court's rationale for granting summary judgment. Accordingly, regardless of whether OPPI disputed these "additional uncontroverted material facts," the trial court would not have been precluded from granting OPPI's summary judgment motion.

Adams contends that this first "uncontroverted material fact" (# 39) somehow would have precluded OPPI from asserting a statute of frauds defense to his breach of contract claim, yet Adams fails to explain why such is the case. As explained in detail in Point Three, the trial court did not err in ruling that the statute of frauds acted to bar the breach of contract claim in light of the fact that Adams admitted that the contract could not be completed within a year. As such, what Adams now suggests he "understood" to be the terms of the contract is irrelevant because he had already conceded the issue for the purposes of the litigation.

Likewise, we find it difficult to discern, without any explanation from Adams on appeal, why this second "uncontroverted material fact" would have precluded the trial court from granting OPPI's motion for summary judgment as it pertained to the unjust enrichment claim. As explained in detail in Point Five, the only resource Adams conferred to OPPI was his labor,

which he did not dispute he was fairly compensated for via his salary from OPPI. To quote the trial court, "[c]ertainly a compensable claim would exist had Adams continued working as project manager without compensation ... [b]ut, those are not the allegations presented here."

For all of the aforementioned reasons, Adams has failed to demonstrate any prejudice that would entitled to him relief on appeal.

Point Six is denied.

## II. Motion To Dismiss

■ Finally, in Point Four, Adams argues that the trial court erred in dismissing Count III of his Petition (pursuant to Section 970 of the California Labor Code[8]) based on OPPI's motion to dismiss because the Court improperly found that it was time barred as a matter of law.[9]

■ "The standard of review for a trial court's grant of a motion to dismiss is *de novo.*" *Lynch v. Lynch,* 260 S.W.3d 834, 836 (Mo. banc 2008). "When this Court reviews the dismissal of a petition for failure to state a claim, the facts contained in the petition are treated as true and they are construed liberally in favor of the plaintiffs." *Id.* "If the petition sets forth any set of facts that, if proven, would entitle the plaintiffs to relief, then the petition states a claim." *Id.*

The trial court, in dismissing Count III of Adams's Petition, found that California's applicable one year statute of limitations period applied and noted "that the Sec. 970 claim was not asserted within the one year limitation" In arguing that the trial court's dismissal of Count III was proper, OPPI

cites to our holding in *Alvarado v. H & R Block, Inc.,* 24 S.W.3d 236 (Mo.App. W.D. 2000), for the proposition that when a cause of action "originates" in a state other than Missouri, Missouri applies the foreign state's statute of limitations through Missouri's borrowing statute. While this is a true proposition of law, the fatal flaw in OPPI's argument is that it does not even attempt to analyze where Adams's claim originated pursuant to the law as outlined in *Alvarado:*

> In ruling on statutes of limitations issues, the law of the forum state is applied. Missouri, the forum, considers statutes of limitations issues procedural, and therefore governed by Missouri law.... When a cause of action 'originates' in a state other than Missouri, however, Missouri applies the foreign state's statute of limitations through Missouri's borrowing statute. If that state's statute of limitations bars the action, Missouri's borrowing statute bars the action in Missouri as well....

Missouri's borrowing statute, Section 516.190, provides: "Whenever a cause of action has been fully barred by the laws of the state, territory or country in which it originated, said bar shall be a complete defense to any action thereon, brought in any of the courts of this state." "Originated" as used in § 516.190 is synonymous with "accrued" as used in § 516.100.

Section 516.100 states: "for the purposes of sections 516.100 to 516.370, the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting

---

8. California Labor Code Section 970 prohibits an employer from knowingly making a false representation to an employee regarding the length of the employment in order to induce an employee to relocate for the employment.

9. The motion to dismiss was actually filed by OPPI and Foote, but for ease of analysis on this point we will refer to these parties simply as OPPI.

therefrom is sustained and is capable of ascertainment. . . ." In applying this test, the courts have held that a cause of action accrues when an injury is complete as a legal injury. This occurs when the plaintiff could have successfully maintained the action. . . .

Section 516.100 not only determines when a cause of action accrues but also *where* it accrues for the purpose of applying the borrowing statute, § 516.190. The cause arises where and when the final significant event that is essential to a suable claim occurs.

*Id.* at 241–42 (citations omitted).

In *Alvarado,* taxpayers brought suit against H & R Block, alleging it performed services in a negligent and fraudulent manner after the Internal Revenue Service assessed penalties against taxpayers. *Id.* at 239. We concluded that taxpayers' claims were barred by the applicable California statute of limitations because the "Alvarados cause of action accrued where the Alvarados ascertained that they had sustained damages in the form of assessed penalties by the IRS pertaining to the preparation of their tax returns [and t]he Alvarados received the IRS notices, from which they were capable of ascertaining that they had sustained damages, while they were living in California." *Id.* at 242.

Therefore, pursuant to *Alvarado,* the dispositive analysis on this issue is where Adams's claim originated and accrued, i.e., when and where Adams's damages were sustained and capable of ascertainment. *Id.; Wright v. Campbell,* 277 S.W.3d 771, 774 (Mo.App. W.D.2009) (" 'Because a cause of action originates where it accrues, § 516.100 not only determines *when* a cause of action accrues but *where* it accrues for purposes of determining whether the borrowing statute operates to bar an

action.' Accordingly, a cause of action accrues, and 'originates' for purposes of § 516.190, when and where the damage 'is sustained and is capable of ascertainment.' ").

Here, OPPI does not dispute on appeal that "Adams could not have maintained a suit under Section 970, which Defendants admit, until his termination in Missouri." Furthermore, OPPI expressly concedes on appeal that "OPPI terminated Adams' employment when Foote and Adams were at a breakfast meeting in Kansas City, Missouri."

Pursuant to these undisputed facts, we find it difficult to discern how Adams's Section 970 claim originated or accrued anywhere other than Missouri, notwithstanding the fact that the claim is based on California substantive law. As such, Missouri's borrowing statute, Section 516.190, is inapplicable to the instant matter. Thus, we would assume that Missouri law (the law of the forum state) would apply, meaning Missouri's three year statute of limitations period governs to determine whether Adams's Section 970 claim was timely filed.[10] OPPI cites no authority to the contrary.

Alternatively, OPPI argues that "Missouri's statutes of limitation cannot salvage Adams' Section 970 Claim" because "Adams' claim would have originated at the time of the alleged misrepresentations, 2004." We disagree. As outlined above, Section 516.100 is clear that "the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment."

In light of the limited evidentiary record established on this issue, which was dis-

---

10. Assuming that Missouri's statute of limitation applies, it is undisputed that Section 516.130(2) provides for a three year statute of limitations that is applicable to Adams's Section 970 claim.

posed of by the trial court on a motion to dismiss, it is impossible for this Court to pinpoint when Adams's alleged damages were "sustained" and "capable of ascertainment." However, when reviewing the facts in the light most favorable to Adams, as we must pursuant to our standard of review, it is apparent that Adams's cause of action was not "sustained" nor "capable of ascertainment" until OPPI discharged Adams on January 4, 2007. Because Adams filed his Section 970 claim on August 26, 2008, which was within the applicable three year period, we conclude that the trial court erred in dismissing Adams's claim as time barred.

### Conclusion

The trial court's judgment, which granted OPPI's summary judgment motion as it pertained to Adams's breach of contract claim and unjust enrichment claim, is affirmed. However, as it pertains to Adams's Section 970 claim, the trial court's judgment is reversed and remanded because the trial court erred in concluding that this claim was time barred based on the motion to dismiss.

All concur.