Kimberly A. ACCURSO, Respondent,

v.

AMCO INSURANCE COMPANY and Mount Vernon Fire Insurance Company, Appellants.

No. WD 70087.

Missouri Court of Appeals, Western District.

Aug. 4, 2009.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 22, 2009.

Application for Transfer Denied Nov. 17, 2009.

William A. Larson, Topeka, KS, for Appellant AMCO.

John M. Waldeck and Casey P. Murray, Leawood, KS, for Appellant, Mt. Vernon.

Jason M. Pottenger, Kansas City, for Respondent.

Before HAROLD L. LOWENSTEIN, P.J., JAMES EDWARD WELSH, and MARK D. PFEIFFER, JJ.

JAMES EDWARD WELSH, Judge.

Amco Insurance Company and Mount Vernon Fire Insurance Company appeal the circuit court's judgment for Kimberly A. Accurso on her claim for underinsured motorist benefits. Amco and Mount Vernon contend that the circuit court erred in applying Missouri law to determine whether the underinsured limits under the respective policies could be stacked. Mount Vernon also contends that the circuit erred in its order granting Accurso's motion for summary judgment because material facts were in dispute. We affirm the circuit court's judgment.

On August 28, 2004, Accurso went on a bicycle ride with her dogs and a friend near 183rd Street and Holmes Road in

Cass County, Missouri. When one of Accurso's dogs was struck by a car, Accurso ran out into the street to help and was struck by another car. As a result of the collision, Accurso suffered significant damages. Accurso sued John Duke, the driver of the vehicle, for negligence and sued Amco and Mount Vernon, claiming underinsured motorist benefits.

Accurso lived in Leawood, Kansas, with her six children. At the time of the accident, she was separated from her husband, Louis Accurso. Both Accurso and her estranged husband were named insureds on the two insurance policies at issue. Their primary personal automotive liability insurance policy from Amco covered five cars and two trailers and had uninsured/underinsured limits of $250,000 per person and $500,000 per accident. Accurso's husband filled out the application for the Amco policy and used the mailing address of 4646 Roanoke Parkway, Kansas City, Missouri 64112, which is the address of Accurso's husband's law office. The Amco policy was delivered to this address, and the insurance identification cards issued by Amco listed this Missouri address. The policy also said that the Leawood, Kansas, address was the alternate garage location for three of the vehicles. The application for the Amco policy showed that all of the vehicles to be insured were registered in Kansas and showed that all of the drivers listed had Kansas driving licenses. However, prior to the accident, Accurso's husband re-titled all of the insured vehicles in Missouri.

Accurso and her husband were also named insureds on an excess policy issued by Mount Vernon. The Mount Vernon policy provided coverage to owned vehicles that were covered by underlying insurance. The policy listed the Accursos' address as the Leawood, Kansas, address and provided uninsured/underinsured lim-

its of $250,000 per person and $500,000 per accident. On January 9, 2004, Accurso's husband requested that Mount Vernon add to the policy a new home at 203 East 126th Street, Kansas City, Missouri, which he had purchased. On January 13, 2004, the Accursos' insurance agent, Kenneth Voorhees, sent a letter to Accurso's husband stating he had "requested cost to add your new home in Missouri." Pursuant to Accurso's request, Mount Vernon issued an endorsement charging an additional $56 premium for the "Addition of the location." On June 21, 2004, the Mount Vernon policy issued an endorsement changing the principal address on the policy to 4646 Roanoke Parkway, Kansas City, MO 64112.

On February 14, 2008, Mount Vernon filed a Motion for Partial Summary Judgment which sought a ruling from the circuit court that Kansas law applies to the determination as to how much the Mount Vernon policy is obligated to pay Accurso for her injuries. Amco joined in Mount Vernon's request for partial summary judgment. In response, Accurso filed a Motion for Partial Summary Judgment on February 27, 2008, seeking a ruling from the circuit court that Missouri law shall apply to this case and that stacking of coverage be allowed under the insurance policies issued by Amco and Mount Vernon. On June 23, 2008, the circuit court granted Accurso's motion for partial summary judgment and denied Mount Vernon's and Amco's motion for partial summary judgment. Based on that ruling and the parties' stipulation to damages, the circuit court issued a Final Judgment on August 27, 2008. Amco and Mount Vernon appeal.

When considering appeals from summary judgments, we review the record in the light most favorable to the party against whom judgment was entered, and we afford that party the benefit of all

reasonable inferences. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We review the circuit court's granting of a summary judgment *de novo. Id.* "The propriety of summary judgment is purely an issue of law." *Id.* Because the circuit court's judgment is based on the record submitted and the law, we need not defer to the circuit court's order granting summary judgment. *Id.* We will affirm the circuit court's grant of summary judgment if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Id.* at 380.

■■■ Both Amco and Mount Vernon contend that the circuit court erred in granting summary judgment and applying Missouri law in determining whether the underinsured limits under the respective policies could be stacked. Under Missouri law, the stacking[1] of underinsured motorist benefits is permitted when an insurance policy treats underinsured and uninsured coverage the same.[2] *Krombach v. Mayflower Ins. Co.*, 827 S.W.2d 208, 212 (Mo. banc 1992); *Bauer v. Farmers Ins. Co.*, 270 S.W.3d 491, 494 (Mo.App.2008). Indeed, in this case the uninsured and under-

insured motorist coverages are combined within the same section, and the premiums for these coverages are combined into a single premium. Thus, if Missouri law applies, the coverages should be stacked. *Krombach*, 827 S.W.2d at 212. Amco and Mount Vernon assert, however, that Kansas law, which prohibits stacking of underinsured motorist benefits, should apply. *See* K.S.A. 40–284(d); *Eidemiller v. State Farm Mut. Auto. Ins. Co.*, 261 Kan. 711, 933 P.2d 748, 756 (1997). We disagree.

■■■ Missouri has adopted sections 188 and 193 of the Restatement (Second) Conflict of Laws (1971) for determining choice of law issues as they relate to insurance contracts. *Hartzler v. Am. Family Mut. Ins. Co.*, 881 S.W.2d 653, 655 (Mo. App.1994). Under section 193, "the principal location of the insured risk is given greater weight than any other single contact in determining the state of applicable law provided that the risk can be located in a particular state." *Sheehan v. Nw. Mut. Life Ins. Co.*, 44 S.W.3d 389, 397 (Mo.App.2000). "Comment b to section 193 describes the principal location of the insured risk as 'the state where it will be during at least the major portion of the

1.  " 'Stacking' refers to an insured's ability to obtain multiple insurance coverage benefits for an injury either from more than one policy, as where the insured has two or more separate vehicles under separate policies, or from multiple coverages provided for within a single policy, as when an insured has one policy which covers more than one vehicle." *Niswonger v. Farm Bureau Town & Country Ins. Co. of Mo.*, 992 S.W.2d 308, 313 (Mo. App.1999).

2.  In *Krombach*, the Missouri Supreme Court explained the rationale for stacking underinsured motorist coverages when the policy treats underinsured motorist coverage the same as uninsured motorist coverage:

    There are no statutory requirements in Missouri for underinsured motorist coverage. Therefore, the existence of underinsured motorist coverage and its ability to be

stacked are ordinarily determined by the contract. In some policies, however, underinsured motorist coverage and uninsured motorist coverage are lumped into the same provisions of the policy. Where the insurance carrier lumps apples and oranges together and calls the entire class "apples," the courts have treated it as such. The same public policy that invalidates anti-stacking provisions of uninsured motorist coverage is equally applicable to underinsured motorist coverage if the two are treated as the same in the insurance contract. The preparer of the insurance contract may not collect premiums for mandated insurance coverage and then by anti-stacking provisions deny multiple coverage.

*Krombach*, 827 S.W.2d at 212 (citations omitted).

insurance period' " and states further that in the case of an automobile liability policy, "it is where the vehicle will be garaged during most of the period." *Superior Equip. Co., Inc. v. Md. Cas. Co.,* 986 S.W.2d 477, 481 (Mo.App.1998).

■ In this case, at the time of Accurso's accident on August 28, 2004, the five insured motor vehicles had a primary or "principal" location in Missouri according to the Amco policy. The Amco policy contained a Missouri address and was sent to a Missouri address. Moreover, the policy's declarations page identified the Kansas address as an "alternate garaging location" for three of the vehicles. We agree with Accurso and the circuit court that "alternate" does not mean primary; it means in addition to the primary location.

As for the Mount Vernon policy, on June 21, 2004, the principal address for the policy was changed to a Missouri address.[3] Comment d to section 193 of the Restatement says:

> There may also be occasions when following the issuance of the policy the principal location of the risk is shifted to some other state. In such a situation, this other state will have a natural interest in the insurance of the risk and it may be that its local law should be applied to determine at least some issues arising under the policy. In any event, application of the local law of the other state would hardly be unfair to the insurance company, at least with respect to some issues, if the company had reason to foresee when it issued the policy that there might be a shift to another state of the principal location of the risk.

We believe that when Mount Vernon received notice that the Accursos' principal address had changed, Mount Vernon had reason to foresee that the principal location of the risk had shifted to Missouri. Moreover, before Accurso's accident, the vehicles were registered and licensed in Missouri. The principal location of the insured risk, therefore, was Missouri.

■ Because the location of the insured risk is given greater weight than any other single contact, we believe that section 193 of the Restatement resolves this case. However, we nevertheless look to section 188 of the Restatement to examine which state has the most significant relationship and confirm our conclusion that Missouri law applies. Section 188 provides:

> (2) In the absence of an effective choice of law by the parties ... the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
> (1) the place of the contracting,
>
> (2) the place of negotiation of the contract,
>
> (3) the place of performance,
>
> (4) the location of the subject matter of the contract, and
>
> (5) the domicile, residence, nationality, place of incorporation and place of business of the parties.

RESTATEMENT (SECOND) CONFLICT OF LAWS § 188 (1971). In considering these five factors, we also apply the choice of law principles of section 6 of the Restatement (Second) Conflict of Laws. *Armstrong Bus. Servs., Inc. v. H & R Block,* 96 S.W.3d 867, 872 (Mo.App. 2002). Those principles are:

> "It is hereby agreed and understood that the name and/or address of the insured is amended to read as follows: Louis C. and Kimberly A. Accurso, 4646 Roanoke Parkway, Kansas City, MO 64112."

---

**3.** Although Mount Vernon contends that this was only a mailing address, nothing with the endorsement indicates that it was only a mailing address. Under the heading "Name/Principal Address Change," the endorsement said:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

RESTATEMENT (SECOND) CONFLICT OF LAW § 6(2) (1971).

Applying the factors of section 188 and the principles of section 6, Missouri has the most significant relationship in this case. Accurso's husband was in Missouri at the time he negotiated and contracted for the insurance policies at issue, and both of the insurance companies involved in this case are located outside of Kansas and Missouri. If the parties negotiate a contract remotely and no single place of negotiation and agreement exists, the place of the negotiation is less important. *See* RESTATEMENT (SECOND) CONFLICT OF LAWS § 188, comment e. Likewise, the place of performance in this case is uncertain because the parties did not know where future law suits would be brought. "[T]he place of performance can bear little weight in the choice of the applicable law when ... at the time of contracting it is either uncertain or unknown." *Id.* Moreover, the location of the subject matter of the contract in this case is less certain because the contract does not deal with "a specific physical thing," nor does it "afford protection against a localized risk ..." *Id.* However, the Amco policy stated that the five insured motor vehicles had a primary or *"principal"* location in Mis-

souri and that three of those vehicles had an "alternate garaging location" in Kansas. As for the Mount Vernon policy, the principal address was changed to a Missouri address before the accident occurred in this case. Moreover, before Accurso's accident, the vehicles were registered and licensed in Missouri. The final factor is the domicile, residence, nationality, place of incorporation, and place of business of the parties. Accurso was residing in Kansas at the time of the accident, and her husband was residing in Missouri at the time of the accident. Thus, applying the factors of section 188, the evidence established that the factors were either inapplicable or they weighed in favor of applying Missouri law.

Mount Vernon asserts, however, that the circuit court erred in focusing exclusively on Accurso's husband contacts rather than on Accurso's contacts in Kansas in determining the principal location of the insured risk and in applying the significant relationship test. In support of this argument, Mount Vernon relies on its severability clause, which says: "This insurance applies separately to each **insured,** but this does not increase our POLICY LIMITS per **loss.**" This severability clause does not, however, control the choice of law analysis. We agree that both Accurso and her husband were named insureds on the contracts and that we should look to both insureds in examining the factors involved in a choice of law analysis. Although the evidence established that Accurso lived in Kansas, the evidence established that the Mount Vernon policy listed a Missouri address for the principal address for its policy and that the vehicles were registered and licensed in Missouri.

The fact that vehicles had an *alternate* garaging location in Kansas does not change the fact that the principal location of the insured risk was in Missouri.

"[T]he applicable law should be the law of the state which the parties contemplated as the principal location of the insured risk." *Hartzler*, 881 S.W.2d at 655. According to *Hartzler*:

> Comment b to § 193 [of the Restatement (Second) Conflict of Laws] describes the principal location of the insured risk as "the state where it will be during at least the major portion of the insurance period" and states that in the case of an automobile liability policy, the parties will usually know where the vehicle will be garaged at least during most of the period in question.

*Id.* Indeed, before the accident occurred in this case, Mount Vernon was notified that the principal address for the policy for both Accurso and her husband was a Missouri address. Thus, Mount Vernon knew that the principal address changed from Kansas to Missouri, and the parties understood that the Missouri address would be the principal location of the insured risk as evidenced by the change of address. Moreover, Mount Vernon knew Accurso's husband added a new home in Missouri to the policy for an additional premium. Further, Accurso's husband licensed and registered the insured vehicles in Missouri prior to the accident. Given this evidence, the location of the insured risk on the Mount Vernon policy transferred from Kansas to Missouri, and Missouri law was the appropriate law to govern. *See New Jersey Mfrs. Ins. Co. v. MacVicar*, 307 N.J.Super. 507, 704 A.2d 1343 (N.J.Super.Ct.App.Div.1998) (Pennsylvania became the principal location of risk covered under automobile policy once insured moved there from New Jersey).

Thus, in balancing the interests of each state, Missouri has the most significant relationship to the parties with regard to interpretation of the insurance policies. As such, pursuant to Missouri law, stacking of the underinsured benefits under the Amco and Mount Vernon policies is warranted.

Mount Vernon also asserts that the circuit court erred in its order granting Accurso's motion for summary judgment because material facts were in dispute. In particular, Mount Vernon contends that the testimony of Accurso's husband stating that he intended and expected to have Missouri automotive coverage in 2004 and that he purposely negotiated for contracts of insurance in Missouri was disputed by the testimony of the insurance agent who stated that Accurso's husband never requested Missouri automotive coverage until 2006. The insurance agent's testimony does not create a genuine dispute as to what the expectations and intentions of Accurso's husband were at the time he negotiated the Mount Vernon policy. While justified expectations may be a consideration under section 6 of the Restatement, it is one of many factors and is not particularly helpful to either party in our analysis, especially given our view that section 193 of the Restatement is dispositive.

We, therefore, affirm the circuit court's judgment.

All concur.