

# In the
# Missouri Court of Appeals
# Western District

JOSIAH WRIGHT,                    )
   Respondent,        )
          )
v.                               )
          )  **WD84602**
PHILLIP NASH,                    )
   Respondent,        )  **OPINION FILED:  May 31, 2022**
and                              )
          )
KEY INSURANCE COMPANY,           )
   Appellant.         )

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable Marco Roldan, Judge

Before Division Four:  Cynthia L. Martin, Chief Judge, Presiding, Anthony Rex Gabbert, Judge and Janet Sutton, Judge

Key Insurance Company ("Key Insurance") appeals from the trial court's entry of judgment in favor of Josiah Wright ("Wright") in an equitable garnishment action pursuant to section 379.200[1] seeking to collect proceeds from an automobile insurance policy after an accident with Phillip Nash ("Phillip").[2]  Key Insurance argues that the trial court

---

[1]All statutory references are to RSMo 2016, unless otherwise indicated.
[2]Because Phillip Nash and Takesha Nash share a surname, we refer to each by their first name for purposes of clarity.  No familiarity or disrespect is intended.

erroneously declared and applied the law when it concluded that Key Insurance waived its right to rescind the policy after a claim arose, and that the trial court's finding that no material misrepresentations were made by Takesha Nash ("Takesha") when the policy was secured was against the weight of the evidence. Finding no error, we affirm.

## Factual and Procedural History[3]

Takesha purchased an automobile insurance policy issued by Key Insurance through an independent broker with an effective date of February 21, 2014 (the "First Policy). Takesha was the only named insured on the First Policy. The First Policy insured a 2002 Kia Optima ("the Kia") and a 2001 Pontiac. Takesha represented that the vehicles insured by the policy were garaged at her residence in Kansas City, Kansas. The First Policy was renewed by Key Insurance through December 2016.

Phillip was not a named insured on the First Policy and did not live with Takesha. On December 17, 2016, Phillip was involved in a collision while driving the Kia ("the 2016 Collision"). Key Insurance paid a property damage claim associated with the 2016 Collision. However, Key Insurance's investigation led it to believe that Phillip was a registered owner of the Kia, that he operated the Kia on a regular basis, and that he garaged the vehicle at a location other than the location listed on the policy. Key Insurance determined that Phillip was an unacceptable risk because he had a revoked driver's license. Key Insurance issued Takesha a "Notice of Cancellation or Non-Renewal" dated December 21, 2016 (the "First Cancellation") cancelling the First Policy due to an "undisclosed

---

[3]"In the appeal of a bench-tried case, [we] view[ ] the facts in the light most favorable to the trial court's judgment." *Coleman v. Hartman*, 626 S.W.3d 289, 292 n.1 (Mo. App. W.D. 2021) (quoting *Tenampa Inc. v. Bernard*, 616 S.W.3d 327, 330 n.4 (Mo. App. W.D. 2020)).

2

driver" effective "one minute after midnight (12:01 am) on 1/23/2017." Key Insurance issued a "Policy Flag" on the First Policy in its system on December 20, 2016 which stated: "Please cancel for undisclosed driver. Phillip L. Nash, her father, is titled on vehicle, operates vehicle and garages it elsewhere with him. DO NOT REINSTATE OR REWRITE THIS RISK."

On January 20, 2017, a few days before the First Policy was set to expire, Takesha applied for automobile insurance at Tom Rich Insurance Agency, an independent insurance broker. In her application, Takesha identified herself as the named insured, stated that she owned the Kia and a 2001 Pontiac, and identified her residence in Kansas City, Kansas as the location where the vehicles were garaged. Unaware of the Policy Flag on the First Policy, Tom Rich Insurance Agency wrote an auto insurance policy for Takesha with Key Insurance for the Kia and the 2001 Pontiac (the "Second Policy").

While processing issuance of the Second Policy, Key Insurance was alerted to the Policy Flag on the First Policy. Key Insurance made the decision to cancel the Second Policy for the same reasons it cancelled the First Policy, and because it recognized there was a "risk that [Phillip] in fact was still operating the [Kia] on the policy." Key Insurance issued a "Notice of Cancellation or Non-Renewal" dated January 25, 2017 (the "Second Cancellation"). Like the First Cancellation, the Second Cancellation provided that the Second Policy was being cancelled due to an "undisclosed driver." Though the Second Policy was set to expire on February 20, 2017, the Second Cancellation notice informed Takesha that coverage under the Second Policy would "cease one minute after midnight (12:01 am) on 2/27/2017."

3

On February 1, 2017, Phillip was operating the Kia when he was involved in a collision with Wright ("the 2017 Collision"). Wright submitted a claim for bodily injuries. Key Insurance investigated the claim, and its employee Halley Dean ("Dean") had a recorded phone conversation with Takesha on March 6, 2017 as follows:

[Dean]: Now I just need to confirm – it's more some housekeeping information with you for the most part. You and [Phillip] do not live together, is that correct?

[Takesha]: No.

[Dean]: Oh. No, you don't live together? Or, no, that's not correct?

[Takesha]: Oh. No, we don't live together.

[Dean]: Okay. And, uh – have you ever?

[Takesha]: Uh, no, actually.

[Dean]: Okay. Okay. Now, the vehicle that's on the policy – there's two vehicles on the policy. There's the Pontiac and the Kia. Does he typically just keep the Kia with him?

[Takesha]: Uh, he would, yeah.

[Dean]: Okay. So, most of the time he just keeps it at his house?

[Takesha]: Mm-hmm.

[Dean]: Okay. Cause he's on the title for the Kia, right? That's –

[Takesha]: Mm-hmm.

[Dean]: Both of you all –

[Takesha]: Mm-hmm.

[Dean]: – are on the title? Okay.

[Takesha]: Mm-hmm.

4

[Dean]: And then the Pontiac is just in your name?

[Takesha]: Mm-hmm.

[Dean]: Okay. Okay. Since he's on the title, is there any reason that he's not on the policy?

[Takesha]: Uh, no.

[Dean]: Okay. Uh, did the agency ask you about that at all when you, like, went to get the insurance?

[Takesha]: Uh, no.

[Dean]: They didn't ask you about it? Okay.

[Takesha]: Huh-uh.

[Dean]: Okay. Did they see the copies of the registrations?

[Takesha]: Uh, I think so.

[Dean]: Okay. Okay. And, is there any specific reason, though, that you didn't add him to the policy?

[Takesha]: Uh, yeah, cause [sic] I didn't want it to go up.

[Dean]: I understand. I understand. Okay. And there's – you – but, you live alone? There's – there's no other drivers in your household that live with you?

[Takesha]: Huh-uh.

[Dean]: Okay. There's just you, and then [Phillip] is at his address. And then does [Phillip] have any other cars besides the Kia?

[Takesha]: Huh-uh.

Key Insurance denied Wright's claim and rescinded the Second Policy, alleging that Takesha made misrepresentations concerning the ownership, operator, and garaging location of the Kia in her policy application. Key Insurance notified Takesha of the

rescission in a March 8, 2017 letter ("Rescission Notice") which stated: "Per our statement with you on March 6, 2017, you advised that both you and [Phillip] own the Kia, that it is garaged at his residence, and that he was not added to your policy, despite being the owner and principle [sic] driver of the vehicle because it would increase the premium." The Rescission Notice directed Takesha to her signed application for the Second Policy which stated that "'3. All possible drivers of the vehicle' have been disclosed and. '10. Any vehicle titled or registered in any other name' has been disclosed." The Rescission Notice further advised Takesha:

Please review your policy language, which states:

### FRAUDULENT INSURANCE ACT

The commission of a **FRAUDULENT INSURANCE ACT** is a serious offense and may have unexpected consequences under this policy and under the law.

A **Fraudulent Insurance Act** means any act committed by **YOU** or any person who knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to **US** or an agent, any written statement as part, or in support of:

1. an application for the issuance of, or rating of this insurance policy; or

2. a claim for payment or other benefit under this insurance policy

which such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto.

Key Insurance explained, "Because of this, we are denying this claim [for the 2017 Collision], and your coverage will be rescinded."

6

Phillip and Wright agreed to arbitrate the dispute concerning the 2017 Collision. On March 5, 2018, the arbitrator entered an award in favor of Wright and against Phillip in the amount of $4.5 million. The arbitration award was confirmed by the Circuit Court of Jackson County. Wright then filed this equitable garnishment action against Phillip and Key Insurance in the Circuit Court of Jackson County, seeking, as Phillip's judgment creditor, to "enforce the insurance policy issued by [Key Insurance]" and to recover insurance proceeds pursuant to section 379.200. Phillip filed a crossclaim against Key Insurance, asserting claims of bad faith failure to settle and breach of contract.

Wright's equitable garnishment claim was tried to the court on January 19, 2021. Key Insurance relied upon K.S.A. 40-2,118[4] to argue at trial that it could not be required

---

[4]The trial court applied Kansas substantive law. Absent a choice of law provision in the insurance policy, Missouri has adopted sections 188 and 193 of the Restatement (Second) of Conflict of Laws in determining the choice of law issues relating to insurance contracts. *Forsman v. Burgess*, 552 S.W.3d 667, 672 (Mo. App. W.D. 2018) (citing *Accurso v. Amco Ins. Co.*, 295 S.W.3d 548, 551 (Mo. App. W.D. 2009)).

> Section 188 provides that the "most significant relationship" determines the choice of law rules to follow. Section 193 provides that "the principal location of the insured risk is given greater weight than any other single contact in determining the state of applicable law provided that the risk can be located in a particular state." Comment b to section 193 characterizes the principal location of the insured risk as "the state where it will be during at least the major portion of the insurance period" and provides further that, with respect to automobile liability policies, "it is where the vehicle will be garaged during most of the period."

*Id.* (quoting *Accurso*, 295 S.W.3d at 551-52). During the time that the Second Policy was in effect, Phillip lived in Missouri and Takesha lived in Kansas. Generally, section 193 and the fact that Takesha represented the Kia to be garaged at her residence in Kansas would resolve the choice of law issue; however, because Key Insurance disputes that the Kia was garaged in Kansas, we turn to section 188's "most significant relationship" test which considers the following principles: "(1) the place of the contracting, (2) the place of negotiation of the contract, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties." *Accurso*, 295 S.W.3d at 552. Key Insurance is a Kansas insurance company, and Takesha, a Kansas resident, negotiated and contracted for her Second Policy at Tom Rich Insurance Agency in Kansas. Takesha's signed application for the Second Policy stated, "All cars must be garaged in Kansas," and she represented that the Kia would be garaged at her residence in Kansas. Therefore, we agree that Kansas law applies.

7

to pay Wright's claim because the claim involved a fraudulent insurance act by Takesha, as she materially misrepresented the ownership, operator, and garaging location of the Kia.

On March 16, 2021, the trial court issued its "Findings of Fact, Conclusions of Law and Judgment" ("Judgment") in favor of Wright and against Key Insurance on Wright's equitable garnishment claim. The trial court concluded that the Second Policy was in effect on the date of the 2017 Collision and that it provided coverage to Phillip for Wright's judgment. The trial court found that Takesha did not materially misrepresent the ownership, garaging location, or operator of the Kia. The trial court alternatively found that even if Takesha made material misrepresentations, Key Insurance waived the right to rescind or void the Second Policy when, with knowledge of the alleged material misrepresentations, it elected to retain Takesha's premium and to cancel the Second Policy with a future effective date in lieu of immediately rescinding the Second Policy and refunding the premium. The trial court entered judgment in favor of Wright and against Key Insurance for the policy limits of the Second Policy.

Key Insurance sought Rule 74.01(b) certification of the trial court's Judgment as final for purposes of interlocutory appeal because the Judgment "constitutes a complete disposition of [Wright's] claim for relief." The trial court issued amended findings of fact, conclusions of law and judgment ("Amended Judgment") that were essentially identical to those in the Judgment, though the Amended Judgment further found there to be "no just reason for delay of an appeal of this judgment."[5]

---

[5]No party contests the trial court's authority to certify the Amended Judgment for immediate appeal pursuant to Rule 74.01(b); however, because we have a duty to determine, *sua sponte*, whether we have jurisdiction, we briefly discuss the trial court's authority to do so. *Randolph v. City of Kansas City*, 599 S.W.3d 517, 519 (Mo.

8

Key Insurance appeals.

## Standard of Review

"Our review of a court-tried case is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)." *Schieve v. Meyer*, 628 S.W.3d 726, 731 (Mo. App. W.D. 2021) (quoting *In Their Representative Capacity as Trs. for Indian Springs Owners Ass'n v. Greeves*, 277 S.W.3d 793, 797 (Mo. App. E.D. 2009)). "We will affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law." *Id.* (quoting *Greeves*, 277 S.W.3d at 797).

## Analysis

Key Insurance raises two points on appeal. Key Insurance's first point on appeal argues that the trial court erroneously declared and applied the law when it concluded that

App. W.D. 2020) (citation omitted). "[A] judgment resolving one or more claims but leaving one or more claims unresolved is eligible for certification under Rule 74.01(b) as a 'final judgment' for purposes of section 512.020(5) only if it disposes of a 'judicial unit' of claims." *Wilson v. City of St. Louis*, 600 S.W.3d 763, 769 (Mo. banc 2020). Our Supreme Court has explained:

> [A] 'final judgment' for purposes of section 512.020(5) must satisfy the following criteria. First, it must be a judgment (i.e., it must fully resolve at least one claim in a lawsuit and establish all the rights and liabilities of the parties with respect to that claim). Second, it must be 'final,' either because it disposes of all claims (or the last claim) in a lawsuit, or because it has been certified for immediate appeal pursuant to Rule 74.01(b). A judgment is eligible to be certified under Rule 74.01(b) only if it disposes of a 'judicial unit' of claims, meaning it: (a) disposes of all claims by or against at least one party, or (b) it disposes of one or more claims that are sufficiently distinct from the claims that remain pending in the circuit court.

*Id.* at 771 (internal footnote omitted). The trial court's Amended Judgment constitutes a judgment, as it fully resolved Wright's equitable garnishment claim in Wright's favor, was in writing, signed by a judge, and was denominated "judgment." *Id.*, Rule 74.01(a). The trial court included in its Amended Judgment "an express determination that there is no just reason for delay," thus certifying it for immediate appeal pursuant to Rule 74.01(b). The Amended Judgment was eligible to be certified under Rule 74.01(b) because it disposed of all claims by Wright (the equitable garnishment claims against Phillip and Key Insurance). Only Phillip's claims for bad faith failure to settle and breach of contract against Key Insurance remain pending. Accordingly, the trial court had discretion to certify its Amended Judgment for immediate appeal. *Wilson*, 600 S.W.3d at 771.

Key Insurance waived its right to rescind or void the Second Policy pursuant to K.S.A. 40-2,118(f) by choosing to cancel the Second Policy effective on a date after the 2017 Collision because the plain language of K.S.A. 40-2,118(f) provides that an "insurer shall not be required to provide coverage or pay any claim involving a fraudulent insurance act," and because Takesha admitted to material misrepresentations which constituted fraudulent insurance acts. Key Insurance's second point on appeal asserts that the trial court's entry of judgment against Key Insurance was against the weight of the evidence because Takesha's "admitted material misrepresentation of intentionally omitting Phillip [] from her application for insurance in order to receive lower premiums" constituted a fraudulent insurance act that statutorily relieved Key Insurance of any obligation to pay a claim under the Second Policy. We address the points in reverse order as the resolution of the first point on appeal depends for its success on our resolution of the second point on appeal which argues that the trial court's finding that Takesha did not make material misrepresentations in securing the Second Policy is against the weight of the evidence.

***Point Two: The trial court's finding that Takesha did not make material misrepresentations in securing the Second Policy is not against the weight of the evidence***

In response to Wright's equitable garnishment petition, Key Insurance filed an answer and asserted an affirmative defense that the claim was "barred by Takesha's commission of fraudulent insurance acts under K.S.A. 40-2,118." Specifically, Key Insurance alleged that in the January 20, 2017 application for the Second Policy, "Takesha materially misrepresented the ownership of the 2002 Kia Optima and the principal driver of the 2002 Kia Optima which are fraudulent insurance acts under K.S.A. 40-2,118."

10

K.S.A. 40-2,118(a) defines "fraudulent insurance act:"

> For purposes of this act a "fraudulent insurance act" means an act committed by any person who, *knowingly and with intent to defraud*, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written, electronic, electronic impulse, facsimile, magnetic, oral, or telephonic communication or statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance that such person *knows to contain materially false information concerning any fact material thereto*; or conceals, for the purpose of misleading, information concerning any fact *material* thereto.

(Emphasis added). K.S.A. 40-2,118(f) provides:

> In addition to any other penalty, a person who violates this statute shall be ordered to make restitution to the insurer or any other person or entity for any financial loss sustained as a result of such violation. *An insurer shall not be required to provide coverage or pay any claim involving a fraudulent insurance act.*

(Emphasis added). Key Insurance had the burden to prove its affirmative defense. *See*

*Brock v. Dunne*, 637 S.W.3d 22, 29 (Mo. banc 2021) (citation omitted).

The Amended Judgment concluded that Key Insurance did not sustain its burden to prove the affirmative defense that Takesha made material misrepresentations in connection with securing the Second Policy as follows:

> [Key Insurance] argues that it carried its burden to establish its affirmative defense by presenting evidence that Takesha made three representations: 1) she was the only person on the Kia title; 2) she was the operator of the Kia; and 3) the vehicle as being garaged at her house.[6]

---

[6]Key Insurance's answer to Wright's equitable garnishment petition did not allege as an affirmative defense that Takesha committed a fraudulent insurance act by materially misrepresenting where the Kia was garaged. However, Key Insurance did argue that Takesha materially misrepresented the garaging location of the Kia at trial, apparently without objection that the assertion exceeded the scope of the pleaded affirmative defense.

11

Regarding the first representation, both [Phillip] and Takesha testified that only Takesha's name is on the title. Both testified that [Phillip] did not own the vehicle and was not on the title. They also testified that Takesha bought the vehicle for her use. Takesha bought the Kia because she was having problems with her other vehicle.

The second representation concerns who was using the vehicle. Takesha testified that she would allow [Phillip] to drive the vehicle to work several times per week during the winter. [Phillip] testified that he drove the Kia only a few times in 2016 and 2017. The third representation concerns where the vehicle was garaged. The record contains evidence showing that [Phillip] and Takesha do not live together. [Phillip] lived at 3987 Topping Avenue, Kansas City, Missouri. The Kia was kept at Takesha's house. *The Court finds this evidence compelling and credible.* However, even if this Court were to find that Takesha made material misrepresentations, the Court finds that Key has waived its right to void coverage.

(Emphasis and footnote added, internal citations to the record omitted). The trial court's recitation of the evidence it found "credible and compelling" was expressly supported by footnotes in the Amended Judgment which referred Phillip's and Takesha's depositions in Wright's equitable garnishment action.

In its second point on appeal, Key Insurance argues that the trial court's judgment against Key Insurance was against the weight of the evidence because the trial court failed to apply K.S.A. 40-2,118(f) despite fraudulent insurance acts "such as Takesha['s] [] admitted material misrepresentation of intentionally omitting Phillip [] from her application for insurance in order to receive lower premiums." "A claim that a judgment is against the weight of the evidence presupposes that there is sufficient evidence to support the judgment. In other words, weight of the evidence denotes an appellate test of how much persuasive value evidence has, not just whether sufficient evidence exists that tends to prove a necessary fact." *Price v. Thompson*, 616 S.W.3d 301, 313 (Mo. App. W.D.

12

2020) (quoting *Ivie v. Smith*, 439 S.W.3d 189, 205-06 (Mo. banc 2014)). "A judgment is against the weight of the evidence only if the trial court could not have reasonably found, from the evidence at trial, the existence of a fact that is necessary to sustain the judgment." *Meseberg v. Meseberg*, 580 S.W.3d 59, 65 (Mo. App. W.D. 2019) (quoting *Hughes v. Hughes*, 505 S.W.3d 458, 467 (Mo. App. E.D. 2016)). "When the evidence poses two reasonable but different conclusions, the appellate court must defer to the trial court's assessment of that evidence." *Price*, 616 S.W.3d at 313 (citing *Ivie*, 439 S.W.3d at 206). "When reviewing the record under this standard, the appellate court defers to the trial court's findings of fact when the factual issues are contested and when the facts as found by the trial court depend on credibility determinations." *Id.* (citing *Ivie*, 439 S.W.3d at 206). Finally, the trial court, in judging credibility and assigning weight to evidence and testimony, "is free to believe none, part, or all of the testimony of any witness." *Cerna-Dyer v. Dyer*, 540 S.W.3d 411, 415 (Mo. App. W.D. 2018) (quoting *Sharrai v. Sharrai*, 322 S.W.3d 641, 643 (Mo. App. W.D. 2010)).

Based on the foregoing, a party asserting an against-the-weight-of-the-evidence challenge must engage in a four-step analysis, requiring the party to:

> (1) identify a challenged factual proposition, the existence of which is necessary to sustain the judgment;
>
> (2) identify all the favorable evidence in the record supporting the existence of that proposition;
>
> (3) identify the evidence in the record contrary to the belief of that proposition, resolving all conflicts in testimony in accordance with the trial court's credibility determinations, whether explicit or implicit; and,

13

(4) demonstrate why the favorable evidence, along with the reasonable inferences drawn from that evidence, is so lacking in probative value, when considered in the context of the totality of the evidence, that it fails to induce belief in that proposition.

*Reichard v. Reichard*, 637 S.W.3d 559, 589 (Mo. App. W.D. 2021) (quoting *Interest of B.K.F.*, 623 S.W.3d 792, 796-97 (Mo. App. W.D. 2021)).

Neither Key Insurance's point relied on, nor the argument portion of its Brief, identify a challenged factual proposition, the existence of which is necessary to sustain the judgment. Instead, Key Insurance nonspecifically alleges that the judgment was against the weight of the evidence. This generalized assertion is insufficient to satisfy the first-step of the required four-step analysis.

If Key Insurance's second point relied on and related argument is gratuitously afforded a generous interpretation, it appears intended to challenge the findings in the Amended Judgment that Takesha did not materially misrepresent the ownership, location, or operator of the Kia. Yet, Key Insurance has not expressly identified all of the favorable evidence supporting these findings, which included reference in the Amended Judgment to deposition testimony that Takesha was the only person on the title to the Kia, that Takesha bought and used the vehicle for her own personal use, and that the vehicle was garaged at Takesha's house. Key Insurance has all but ignored the second step of the required analysis for an against-the-weight-of-the-evidence challenge by referring only briefly and dismissively to the deposition testimony that was identified in the Amended Judgment and expressly relied upon by the trial court.

14

Most of Key Insurance's argument focuses on identifying evidence that is contrary to the findings in the Amended Judgment that Takesha did not materially misrepresent the ownership, location, or operator of the Kia. Key Insurance argues that the trial court failed to consider Takesha's recorded statement given to a Key Insurance employee where Takesha responded affirmatively when asked whether Phillip was on the title to the Kia, and whether Phillip typically kept the Kia with him. Key Insurance's identification of evidence it claims is contrary to findings required to sustain the Amended Judgment is only partially compliant with the third step of the required analysis for an against-the-weight-of-the-evidence challenge, however. Key Insurance has not resolved conflicts between Takesha's earlier recorded statement and the deposition testimony later provided by Takesha and Phillip in accordance with the trial court's credibility determinations as required by the third step. Here, the trial court made an express determination that Takesha and Phillip's deposition testimony, expressly referenced and relied on in the Amended Judgment, was credible and compelling. The conflict, if any, that exists between Takesha's earlier recorded statement and the later deposition testimony has been resolved by an express credibility determination that Key Insurance ignores.

Key Insurance attempts to engage in the fourth step of the required analysis for an against-the-weight-of-the-evidence challenge, by summarily urging that the favorable deposition testimony relied on by the trial court, along with the reasonable inferences drawn from that evidence, is so lacking in probative value, when considered in the context of the totality of the evidence, that it fails to induce belief in the findings that Takesha did not materially misrepresent the ownership, location, or operator of the Kia. Key Insurance

15

argues that Takesha's recorded statement should have been favored over the later deposition testimony because it "was taken shortly after the accident [and it] is undisputed evidence that establishes a fraudulent insurance act. . . . The weight of this direct and undeniable evidence cannot be overcome by inferences drawn from after-the-fact, retrospection in self-serving testimony several years later." Key Insurance's bare assertion to this effect is not self-proving. Even more problematic, the assertion ignores that Takesha and Phillip's deposition testimony, which was deemed credible and compelling by the trial court, offered explanations and important context for many of the statements made by Takesha in the recorded statement and about which Key Insurance complains.

For example, Takesha and Phillip both testified in their depositions that: (1) only Takesha's name was on the title to the Kia and that only she owned the Kia; (2) Takesha purchased the Kia because she was having problems with her other car; and (3) the Kia was always kept at Takesha's house in Kansas City, Kansas. As to the operation of the Kia, Takesha testified that she sometimes let Phillip borrow the Kia in the winter so that he could drive it to work, and Phillip testified that he only drove the Kia "two or three times at the most" during December 2016 to February 2017. And, in addressing the fact the she did not identify Phillip in her application for the Second Policy because she was concerned it would increase her premium, Takesha explained, "that's not quite what I meant. When I initially bought the car, it was my car, so that's what I was putting." Takesha further explained that she thought the premium might increase if Phillip was on the Second Policy because she "thought that's how all car insurance works" but that she had no knowledge of anything in Phillip's driving history or driver's license status that would specifically cause

16

an increase in the policy. It is evident from the record that the trial court considered all of the evidence, including Takesha's recorded statement, and resolved any conflict in the evidence by determining that Takesha and Phillip's deposition testimony referred to in the Amended Judgment was credible and compelling. We defer to that determination. *Cerna-Dyer*, 540 S.W.3d at 415.

Key Insurance has not sustained its burden to establish that the Amended Judgment's rejection of the affirmative defense that Takesha made material misrepresentations in securing the Second Policy was against the weight of the evidence. Perhaps appreciating the high hurdle it faced to sustain this burden, Key Insurance briefly urges in the argument portion of its Brief that the trial court should not have relied on the deposition testimony to find that Takesha did not make material misrepresentations because that testimony was "not available to Key [Insurance] when [it made its] determination as to whether the claim involved a fraudulent insurance act." Key Insurance cites to cases holding that an insurance company's duty to defend is determined at the time the cause of action is commenced, rather than by facts later determined during subsequent discovery or at trial. *See Trainwreck West Inc. v. Burlington Ins. Co.*, 235 S.W.3d 33, 39 (Mo. App. E.D. 2007); *Freightquote.com, Inc. v. Hartford Cas. Ins. Co.*, 316 F. Supp. 2d 937, 942 (D. Kan. 2003).

Cases addressing the information relevant to an insurer's decision not to defend a claim are not controlling as to whether Key Insurance sustained its burden to establish the affirmative defense that it had no obligation to pay Wright's claim under the Second Policy because Takesha's material misrepresentations constituted fraudulent acts under K.S.A. 40-2,118. Even were that not the case, Key Insurance's argument is not preserved for our

17

review, as it is not presented in any point relied on, and as it was not preserved at trial by an objection seeking to exclude, or limit the purpose for admission of, the deposition testimony. *See Reichard*, 637 S.W.3d at 569 n.4 ("Our courts 'adhere[ ] to the well-entrenched doctrine that the questions for decision on appeal are those stated in the points relied on, and a question not there presented will be considered abandoned.'" (quoting *KDW Staffing, LLC v. Grove Constr., LLC*, 584 S.W.3d 833, 837 (Mo. App. W.D. 2019))); *Rosales v. Benjamin Equestrian Ctr., LLC*, 597 S.W.3d 669, 686 (Mo. App. W.D. 2019) ("To preserve for appellate review an error regarding the admission of evidence, a timely objection must be made when the evidence is introduced at trial. If the objection is not made at the time of the incident giving rise to the objection, the objection may be deemed waived or abandoned." (quoting *R & J Rhodes, L.L.C. v. Finney*, 231 S.W.3d 183, 190 (Mo. App. W.D. 2007))).

The trial court's findings that Takesha did not materially misrepresent the ownership, location, or operator of the Kia are not against the weight of the evidence. Point Two on appeal is denied.

***Point One: Key Insurance's reliance on K.S.A. 40-2,118(f) is without merit given the trial court's finding that Takesha made no material misrepresentations in securing the Second Policy***

Key Insurance's first point on appeal argues that the trial court erroneously declared and applied the law when it concluded that Key Insurance waived its right to rescind or void the Second Policy by choosing to cancel the Second Policy at a future date that fell after the 2017 Collision while retaining Takesha's premium because the plain language of K.S.A. 40-2,118(f) provides Key Insurance a statutory right to avoid payment on a claim

18

involving a fraudulent insurance act. Key Insurance asserts that "nothing in the statute or case law requires an insurer to rescind its insurance policy in order to exercise this right. Moreover, under Kansas law, waiver requires full possession of facts of the right waived," which Key Insurance claims cannot occur until the claim is in existence, and thus Key Insurance could not have waived its statutory rights under K.S.A. 40-2,118 before it had full possession of the facts of the 2017 Collision and claim.

The success of Key Insurance's first point on appeal inherently depends on whether Key Insurance sustained its burden to prove that Takesha made material misrepresentations which amounted to fraudulent insurance acts in securing the Second Policy. *See Brock*, 637 S.W.3d at 29. By making an against-the-weight-of-the-evidence challenge in its second point on appeal challenging the findings that Takesha did not materially misrepresent the ownership, location, or operation of the Kia, Key Insurance necessarily acknowledges that sufficient evidence supported those findings. *See Price*, 616 S.W.3d at 313. As we have already explained, the trial court's findings were not against the weight of the evidence. Because Key Insurance failed to carry its burden to establish that Takesha made material misrepresentations amounting to fraudulent insurance acts, Key Insurance's claim of trial court error relating to the application of K.S.A. 40-2,118 is plainly without merit.

Point One is denied.[7]

---

[7]Key Insurance has requested this Court to certify to the Kansas Supreme Court a question of law pursuant to K.S.A. 60-3201 because there exists no controlling precedent in Kansas that is determinative to the issue of "whether an insurer can waive the terms of K.S.A. 40-2,118(f) . . . by issuing a cancellation notice prior to the facts that gave rise to the claim." Having decided that Key Insurance failed to carry its burden to establish that Takesha

19

## Conclusion

The trial court's Amended Judgment is affirmed.

_Cynthia L. Martin_
Cynthia L. Martin, Judge

All concur

---

made material misrepresentations amounting to fraudulent insurance acts, Key Insurance's request to certify this question is denied as moot.

20